Richard M. Pachulski (SBN 90073)
Jeffrey W. Dulberg (SBN 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: 310.277.6910
Fax: 310.201.0760
Email: rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

Attorneys for Genesis Capital, LLC



**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>2401 Nottingham, LLC, a California limited liability company,<br><br>Debtor. | Case No.: 8:16-bk-15243-CB<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF GENESIS CAPITAL FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362 OR, ALTERNATIVELY, MOTION FOR ORDER DISMISSING CHAPTER 11 CASE IF AND TO THE EXTENT NOT PREVIOUSLY DISMISSED, AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JOHN DAY AND JEFFREY W. DULBERG IN SUPPORT THEREOF**<br><br>Hearing Date: February 22, 2017<br>Time: 10:00 a.m.<br>Courtroom: 5D |

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, DEBTOR AND ITS COUNSEL, THE UNITED STATES TRUSTEE, AND OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that, pursuant to 11 U.S.C. § 362(d)(1) and (2) and § 1112(b) of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 4001(a), and Local Bankruptcy Rule 4001, Genesis Capital, LLC (together with its affiliates, "Genesis" or "Movant") hereby moves this Court (this "Motion") for an order, *in the event* that the above-

captioned case (the "Chapter 11 Case") has not already been dismissed by the Court, granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2) against 2401 Nottingham, LLC (the "Debtor" or "Nottingham") to permit Movant, as a secured creditor, to proceed to continue to exercise its state law rights and remedies, including foreclosure, with respect to the property located at 2401 Nottingham Ave., Los Angeles, California 90027, and any associated personal property (the "Property"), if and to the extent that the automatic stay remains applicable in the Chapter 11 Case. Alternatively, Genesis requests that the Chapter 11 Case be dismissed pursuant to Code section 1112(b).

At a January 11, 2017 status conference, upon the Debtor's oral request and the lack of any objection by Genesis, the Court dismissed the Chapter 11 Case, as reflected in the Court's docket:

> Court: "… So we're going to go ahead and – you're [Debtor's counsel] making an oral motion to dismiss?"
>
> Mr. Forsythe [Debtor's counsel]: "Yes, your Honor."
>
> Court: "…. So … with an oral motion to dismiss, I'm going to grant that. And then the creditor can go forward with its remedies."

Based on such dismissal, the automatic stay no longer applies, and Genesis should be unrestrained in expeditiously exercising its state law rights and remedies. However, Movant is informed that the Debtor's principal (Jeffrey Yohai) has refused to lodge an order dismissing the case; thus, it has not been technically dismissed and appears to remain active. In the first instance, Movant requests the Court to reaffirm the prior dismissal of the Chapter 11 Case. Alternatively, if the Court determines that the Debtor's case remains pending, Movant should be provided with relief from the stay; the grounds for granting relief include lack of adequate protection to Movant, lack of Debtor's equity in the real property collateral, and Debtor's inability to reorganize. Further, in the event that the Court does not grant relief from stay as requested herein, Movant seeks the dismissal of the Chapter 11 Case pursuant to Code section 1112(b),[1] on the basis that: (1) this case represents a classic two-party

[1] This Motion is in some respects substantively similar to the motions to dismiss filed by Genesis (collectively, the "Affiliated Motion(s)") filed in each of the chapter 11 cases of the Debtor's affiliates (together with the Debtor, the "Affiliated Debtors" or the "Debtors") pending before this Court – 779 Stradella, LLC, Case No. 16-15156-CB; Mt Yohai, LLC, Case No. 16-15157-CB; and 1550 Blue Jay Way, LLC, Case No. 16-15171-CB (together with the foregoing chapter 11 cases including the Debtor's case, the "Affiliated Cases").



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

dispute between the Debtor and Movant, (2) there is no reasonable likelihood of the Debtor's rehabilitation, and (3) the Debtor has acted in bad faith in filing its voluntary petition, refusing to identify the Affiliated Cases as single asset real estate (SARE) cases subject to the special strictures of the Bankruptcy Code, and in engaging in stonewalling and other dilatory postpetition conduct, all as described further below.

**PLEASE TAKE FURTHER NOTICE** that the Motion has been served upon the Debtor, its counsel, parties requesting special notice, and all creditors, and is based upon the supporting Memorandum of Points and Authorities, the Declarations of John Day and Jeffrey W. Dulberg, the statements, arguments and representations of counsel who appear at the hearing on the Motion, the files and records in the above-captioned case, any evidence properly before the court prior to or at the hearing regarding the Motion and all matters of which the Court may properly take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), responses to the Motion must be filed with the Court and served upon the counsel for Genesis at the address in the upper left-hand corner of this Motion no later than fourteen (14) days prior to the hearing date. Responses must contain a written statement of all reasons the Motion is opposed and must include declarations and copies of all documentary evidence on which the responding party intends to rely. Responses must be filed either electronically or at the following location:

United States Bankruptcy Court
411 West Fourth Street
Santa Ana, CA 92701

**PLEASE TAKE FURTHER NOTICE** that if a response is not timely filed and served, Genesis will request that the Court grant the relief requested in the Motion without further notice or hearing.

**WHEREFORE**, Movant requests that the Court reaffirm or determine that the Debtor's case has been dismissed based on prior motion and statements on the record, alternatively grant Movant

relief from the automatic stay with respect to the Property or, alternatively, dismiss the Chapter 11 Case with prejudice.

Dated: February 1, 2017

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey W. Dulberg*
Richard M. Pachulski
Jeffrey W. Dulberg

Attorneys for Genesis Capital, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

To mitigate continuing substantial prejudice (including the continued accrual of default interest and penalties with respect to overdue property taxes), Movant -the first-priority secured creditor in the Chapter 11 Case- simply seeks fair and reasonable limitations to be placed upon the Debtor. Undeniably, the Debtor filed its case to thwart Movant's scheduled foreclosure proceedings with respect to the Property, which is underwater and is "not a property that we can make work" as openly admitted by Debtor's counsel. The Debtor has no operations, no money with which to maintain the Property and/or prosecute the Chapter 11 Case, and no exit strategy. The sole purpose of the bankruptcy filing was to prevent Movant from proceeding with a foreclosure and exercising its non-bankruptcy rights as a secured creditor.

Based on the foregoing circumstances, not surprisingly, the Debtor moved for dismissal of the Chapter 11 Case at the January 11 status conference, and the Court granted said motion, thereby dismissing the Debtor's case. However, now the Debtor apparently wants to proceed with the case, but it has not filed any Rule 60 motion for reconsideration or other similar relief. In the first instance, Movant requests that the Court reaffirm the clear, prior dismissal of the Chapter 11 Case upon the Debtor's very own motion.

Alternatively, if the Chapter 11 Case was not earlier dismissed or even if the Debtor may file a Rule 60 motion, Movant believes that there is ample cause for the stay to be lifted or the Chapter 11 Case to be dismissed, for Movant to continue with its foreclosure proceedings against the Property. In fact, Debtor's counsel has admitted that the Debtor has no intention and no prospect of reorganizing. This is the paradigm of a two-party bankruptcy case that should be superseded to allow a secured lender to exercise its state law rights and remedies against a bad faith debtor.

## II.

## RELIEF REQUESTED

By this Motion, in the event that the Chapter 11 Case has not already been dismissed, Movant seeks relief from the automatic stay to proceed to exercise all of Movant's rights and

remedies against the Property under the Loan Documents (as defined below), including foreclosure. Alternatively, Movant seeks an order dismissing the Chapter 11 Case with prejudice.

## III.

## RELEVANT FACTUAL BACKGROUND

### A. Movant's Claims Against Debtor and Lien In the Property

In February 2016, the Debtor executed, among other documents, (i) a Promissory Note in favor of Genesis Capital Master Fund II, LLC, a California finance lender, in the principal amount of $3,737,100; (ii) a Business Loan Agreement (Loan No. 2015000441), dated as of February 16, 2016, with Genesis (the "Loan Agreement"); and (iii) a Deed of Trust against the Property recorded in Los Angeles County (Document No. 20160175893) (the "DOT" and collectively with other loan related documents, the "Loan Documents"). Pursuant to the Loan Documents, the Debtor borrowed $3,737,100 from Genesis, with a maturity date of March 1, 2017. The Debtor's obligations under the Loan Documents are secured by the DOT against the Property and are also absolutely and unconditionally guarantied by the Debtor's principal and sole manager, Jeffrey Yohai, pursuant to a Commercial Guaranty (the "Yohai Guaranty").[2] Copies of the Loan Agreement, DOT, and Yohai Guaranty are attached to the Declaration of John Day. The Loan Agreement (at p. 5) provides, among other things, that any breach under the terms of any other agreement between any "Affiliate" of the Borrower[3] and the Lender constitutes a default under the Loan Agreement. As noted further below, the business loans provided by Genesis to each of the other Affiliated Debtors (with respect to the purchase and development of the Affiliated Debtors' developments) were also guarantied by Mr. Yohai and contained similar cross-default provisions.

The Debtor subsequently defaulted under the Loan Documents, and a Notice of Default was recorded in Los Angeles County on August 30, 2016. As of December 15, 2016, the total payoff amount due under the Loan Documents was no less than $4.224 million. Movant's claim continues

---

[2] Movant reserves all of its rights and claims against Mr. Yohai regarding his guaranty of the Debtor's obligations under the Loan Documents.

[3] The Loan Agreement defines "Affiliate" as any person or entity which "directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Borrower, or that has a common guarantor with Borrower." (Loan Agreement, p. 7.) Jeffrey Yohai controls each of the Affiliated Debtors and is also a guarantor of the Affiliated Debtors' debts owed to Genesis. Thus, the Affiliated Debtors are "Affiliates" of one another, for purposes of the Loan Agreement.

to accrue daily interest of approximately $2,075 (or approximately $62,250 per month). A trustee sale of the Property (the "Sale Notice") was scheduled for December 30, 2016. The Debtor filed the Chapter 11 Case the day before -on December 29, 2016- in order to prevent Movant from foreclosing on the Property. The Debtor admitted this fact in its Notice of Scheduling and Case Management Conference Report [Docket No. 10] (in response to question item "What precipitated the bankruptcy filing?" Debtor stated: "Pending foreclosure sale by lien holder – Genesis Capital Master Fund III, LLC").

**B. The Property**

The Property consists of a lot at 2401 Nottingham Avenue, Los Angeles, on which construction of a residential house was started prepetition by Jeffrey Yohai (and/or his affiliates or agents), which had been expected to be sold by Mr. Yohai to a third party upon or prior to construction completion. The purchase, construction and/or completion of this project were to be funded (in whole or in part) by the loan proceeds from Movant pursuant to the Loan Documents.

Based on a title report and public online information available from the Los Angeles County Treasurer and Tax Collector, Movant is informed and believes that the Property is encumbered by, in addition to Movant's first priority deed of trust, (i) a junior deed of trust (junior to the DOT recorded by Movant) in favor of RS Lending, Inc. in the principal amount of $1,000,000,[4] (ii) three or more mechanic's liens, and (iii) Los Angeles County property taxes of at least $21,564 (with interest and/or penalties continuing to accrue). *See* Day Declaration. As the Debtor itself has admitted, the Debtor clearly lacks any equity in the Property. As part of its chapter 11 petition package (Docket No. 1), in its list of creditors with the 20 largest unsecured claims (Form 204), the Debtor listed the Property as having a value of $3.2 million, and thus, according to the Debtor, Movant had a $4.25 million secured claim and a $1.05 million unsecured deficiency claim. Generally consistent therewith, Genesis believes that the current fair market value of the Property is approximately $3 million – which is well over $1 million less than what is owed to Movant under the Loan Documents. *See* Day Declaration, ¶ 6.

[4] As reflected in the transcript, counsel for RS Lending attended the January 11, 2017 status conference.





PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Debtor filed the Chapter 11 Case with no employees, no money, and no strategy, aside from precluding Movant from continuing to exercise its rights as a secured creditor under applicable non-bankruptcy law, which proceedings were commenced prepetition. The Debtor lacks the basic funds to preserve and protect the Property (including the payment of property taxes which continue to accrue interest and/or penalties). The Debtor admitted the futile and underwater status of the Property at the January 11, 2017 status conference. According to Debtor's counsel:

> "In looking at these properties, they're all going to require new value, obviously. The assets are the properties. And the outside investors, in conjunction with Mr. Yohai, have been seriously looking at all these properties, and I can tell you that they're not dreamers. They've concluded that the 2401 Nottingham case, we'll be seeking to dismiss that and give it back to the lender. It's not a property that we can make work."

January 11, 2017 Status Conference Transcript ("January 11 Transcript") (attached to the Dulberg Declaration), p. 3, lines 12-19.

**C. Yohai's Single Commercial Project Including the Debtor's Property**

As acknowledged by the Affiliated Debtors in their respective Notice of Scheduling and Case Management Conference Report, the Affiliated Debtors are in the business of real estate development, and each Affiliated Debtor filed a chapter 11 case to stay pending foreclosure proceedings by the secured lender, Genesis.[5]

Each Affiliated Debtor is controlled by Jeffrey Yohai, the sponsor for these real estate developments and manager of the Affiliated Debtors. Each Affiliated Debtor owns a parcel of real property with one or more residential units constructed thereon by Mr. Yohai and/or his affiliates, other than the Mt. Yohai property which is, as of the petition date, raw land, which Mr. Yohai planned to develop as well.

Based on the circumstances of the Affiliated Debtors and Affiliated Cases, Movant believes that the Affiliated Cases are properly designated as single asset real estate (SARE) cases under Code section 101(51B), including the following:

[5] Genesis is authorized to file this Motion on behalf of itself and its lender affiliates.



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(1) Each real property (owned by the respective Affiliated Debtor) was acquired and is being held for development or sale by Mr. Yohai and/or his affiliates, and not for any other business purpose. Based on information and belief, no other business is being conducted on these real properties, which generate substantially all of the gross income of the Affiliated Debtors. *See* Day Declaration, ¶ 9.

(2) Mr. Yohai is the sponsor and manager of, and ultimately controls, each of these four developments. *See* Day Declaration, ¶¶ 8, 9.

(3) Mr. Yohai, through his underwriting related representations, principal sponsorship and executed guaranties in favor of Genesis, procured funding for each development from Genesis. Thus, the financing for these four developments is substantively connected and intertwined (*e.g.*, Mr. Yohai guaranties, cross-defaults, *etc*.). *See* Day Declaration, ¶ 9.

(4) Mr. Yohai has been marketing for sale the residences built or to be built on the real properties as common developments materialized by Mr. Yohai and/or his affiliates. *See, e.g.*, http://www.marinw.com/new-index-1/ (a printout of this webpage is attached to the Day Declaration).

Notwithstanding the foregoing (and the legal authorities discussed further below), the Debtor and other Affiliated Debtors failed to designate the Affiliated Cases as SARE cases. The Affiliated Debtors' improper identification of the Affiliated Cases should be viewed and recognized by the Court as an attempt to sidestep the special statutory strictures provided in favor of secured lenders in SARE cases.[6]

**D. Earlier Dismissal of the Chapter 11 Case**

At the January 11, 2017 status conference, upon the Debtor's oral request and the lack of any objection by Genesis, the Court dismissed the Chapter 11 Case:

> Court: "Okay. So we're going to go ahead and – you're making an oral motion to dismiss [the Chapter 11 Case]?"
>
> Mr. Forsythe [Debtor's counsel]: "Yes, your Honor."

[6] In the event that the Court is not inclined to lift the stay or dismiss the Chapter 11 Case, Movant requests the Court to have the Affiliated Cases designated as SARE cases.



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> Court: "…. So … with an oral motion to dismiss, I'm going to grant that. And then the creditor can go forward with its remedies."

January 11 Transcript, p. 5, lines 8-15. The Court Clerk subsequently entered on the docket entry number 13: "Hearing Held – CASE DISMISSED." As represented at the status conference, Debtor's counsel was to lodge an order with the Court, but evidently failed to do so. Movant is informed that the Debtor's principal (Jeffrey Yohai) contends that the Debtor's case has not been dismissed and remains active, notwithstanding the Debtor's oral motion to dismiss and the Court's ruling thereon set forth on the record at the January 11 status conference.

**E. Debtor's Dilatory Postpetition Conduct**

Subsequent to the Affiliated Cases filings, the Debtor engaged in bad faith stonewalling and other dilatory conduct, to drag the cases along at Movant's expense. In particular, promptly following the filing of the cases, on December 28, 2016, counsel for Genesis reached out to counsel for the Debtors in an effort to begin a dialogue. Rather than Mr. Yohai, however, the Debtor's counsel informed Genesis that Mr. Matthew Browndorf of Wilson Keadjian Browndorf LLP, a New York based attorney with no apparent connection to the Debtors, would be the Debtors' representative for any negotiations.

Naturally, Genesis was surprised to learn that an outside party who had yet to seek Court approval to represent the Debtor – and still has not – would be speaking for the Debtor. Genesis inquired of Messrs. Forsythe and Browndorf specifically as to the "bona fides" of Mr. Browndorf – *did he have specific authority to speak for the Debtors, not to mention, authority to bind them*? Messrs. Browndorf and Forsythe repeatedly assured Genesis that Mr. Browndorf was so authorized although they were unable or unwilling to produce anything in writing to this effect.

Nonetheless, Genesis proceeded in the utmost good faith to engage in discussions with Mr. Browndorf. For approximately two weeks, through January 13, 2017, Genesis engaged in settlement discussions with Mr. Browndorf with respect to each of the Debtors. Although led to believe that Mr. Browndorf had the authority to negotiate for the Debtors in good faith, as it turned out, this was untrue. After devoting many hours to negotiations, some two weeks after Mr. Browndorf initiated the discussions, Genesis came to learn (a) Mr. Yohai had not authorized Mr. Browndorf to represent,



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

much less bind, him or the Debtors and (b) Mr. Yohai "vehemently" disagreed with Mr. Browndorf's assessment of certain of the Debtors' properties and would not honor the tentative agreement reached with respect to 2401 Nottingham. Despite this regretful turn of events, Genesis persisted in good faith to attempt to continue negotiations with the Debtors through Mr. Forsythe. Genesis was assured by Mr. Forsythe that the Debtors would "pick up the pieces" and re-start a good faith discussion; on the contrary, neither Mr. Forsythe nor Mr. Yohai have been heard from since.

It is plain to see that the Debtors are – at best – managed in a grossly incompetent manner. Rather than conduct a straightforward discussion with its lender, the Debtors elected to drag Genesis through a month of wasted discussions followed by several weeks of outright stalling and silence. The Debtors obviously intended to harm Genesis through this conduct and they have done so by prejudicing Genesis' rights as a lender to an SARE project and by failing to honor its promises made in negotiations with Genesis.

**F. <u>Debtor's Lack of Compliance With Bankruptcy Requirements</u>**

The Debtor has shirked its statutory as well as UST obligations, including failing to file its Schedules of Assets and Liabilities and Statement of Financial Affairs, and to submit to the U.S. Trustee its Real Property Questionnaire (form UST-5), among various other documents.

Similarly, the other Affiliated Debtors also failed to timely submit to the U.S. Trustee numerous required documents, including evidence that prepetition bank accounts have been closed and DIP bank accounts have been opened, financial statements and cash flow projections, and a list of insiders. In each of the other Affiliated Cases, based on those Affiliated Debtors' lack of compliance with bankruptcy requirements, the U.S. Trustee filed a motion to dismiss each of those Affiliated Cases or to convert to chapter 7. A hearing on those motions to dismiss is also scheduled for February 22, 2017. Movant believes that the U.S. Trustee has not filed a motion to dismiss the Debtor's Chapter 11 Case, because the U.S. Trustee views the Chapter 11 Case as already having been dismissed as set forth at the January 11 status conference.

Movant submits that the Debtor's lack of compliance with postpetition bankruptcy requirements, together with the Debtor's bad faith stonewalling (described above), collectively

demonstrate an attempt by the Debtor to misuse and abuse the bankruptcy process for improper purposes.

## IV.

## ARGUMENT

### A. The Debtor's Case Has Been Dismissed

In the first instance, Movant submits that, as discussed above, the Debtor's Chapter 11 Case has already been dismissed by the Court, pursuant to the Debtor's oral motion. That fact –in and of itself– should resolve this matter.

### B. Alternatively, the Automatic Stay Should Be Lifted for "Cause" Under § 362(d)(1)

Even if the Chapter 11 Case had not been previously dismissed or even if the Debtor may desire to file a Rule 60 motion for reconsideration, Movant should be granted relief from the stay to proceed against the Property.

Section 362(d)(1) of the Bankruptcy Code provides that the automatic stay shall be lifted for cause, including the lack of adequate protection, after notice and a hearing. *See* 11 U.S.C. § 362(d)(1). Section 362(d)(1) provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, ***including the lack of adequate protection of an interest in property of such party in interest*** . . .

11 U.S.C. § 362(d)(1) (emphasis added).

The term "cause" reflects a flexible standard, taking into account the particular facts and circumstances of the particular issue before the Court. *See In re Conejo Enters., Inc.*, 96 F.3d 346, 352 (9th Cir. 1996) (noting that "cause has no clear definition and is determined on a case-by-case basis") (internal citations and quotations omitted); *In re Brotman Med. Ctr., Inc.*, 2008 WL 8444797, at *5 (B.A.P. 9th Cir. Aug. 15, 2008) (same); *Delaney-Morin v. Day (In re Delaney-Morin)*, 304 B.R. 365, 369 (B.A.P. 9th Cir. 2003) (citation omitted); *Baldino v. Wilson (In re Wilson)*, 116 F.3d



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

87, 90 (3d Cir. 1997) (noting that section 362(d)(1) "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."). "The bankruptcy court generally has broad discretion in granting relief from stay for cause under § 362(d)." *In re Edwards*, 454 B.R. 100, 107 (B.A.P. 9th Cir. 2011). "Exercising discretion in determining cause for stay relief requires the balancing of hardships and consideration of totality of the circumstances." *In re Avila*, 1311 B.R. 81, 83-4 (Bankr. N.D. Cal. 2004) (citing *In re Kennedy*, 165 B.R. 488, 490 (Bankr. W.D. Wash. 1994)).

With respect to secured creditors, the purpose of providing adequate protection under section 362(d)(1) is to:

> insure that a creditor receives the value for which it bargained pre-bankruptcy. Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is evaluated on a case-by-case basis . . . The erosion, or threatened erosion, of a secured creditor's position "may be shown through evidence of declining property values, the increasing amount of the secured debt through interest accruals or otherwise, the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position."

*In re DB Capital Holdings, LLC*, 454 B.R. 804, 816-817 (Bankr. D. Colo. 2011) (granting relief from stay) (citations omitted); *see also In re Gundrum*, 509 B.R. 155, 161-62 (Bankr. S.D. Ohio 2014) ("[a]n offer of adequate protection based on the speculative possibility that the funds will materialize simply does not constitute adequate protection.") (citations omitted); *In re H.T. Pueblo Properties, LLC*, 2011 WL 6962754, at *8 (Bankr. D. Colo. Dec. 30, 2011) ("[T]he Debtor's projections are overly optimistic and speculative, and not based on the Debtor's recent past and present performance. Such projections cannot demonstrate adequate protection pursuant to § 361."); *In re Chevy Devco*, 78 B.R. 585, 589 (Bankr. C.D. Cal. 1987) (finding that potential success is not sufficient for purposes of adequate protection; "the facts show that success is more fantasy than expectation.").

Moreover, courts have also held that filing a bankruptcy petition in bad faith constitutes the requisite cause to lift the automatic stay. *See, e.g., In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (9th Cir. 1996) (citing *In re Walter*, 108 B.R. 244, 247 (Bankr. C.D. Cal. 1989)).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In the instant case, the Debtor has no money or operations to fund the administration of this case or the preservation or disposition of the Property, and no prospect of proposing a viable plan. Further, there is no evidence that the Debtor has any equity in the Property; indeed, Movant's claim is substantially undersecured (discussed further below). As admitted by Debtor's counsel, the Debtor's Property is "not a property that we can make work" and there are no outside-investor "dreamers" out there. The Debtor filed for bankruptcy on the eve of foreclosure in order to utilize the automatic stay as a delay tactic, preventing Movant (or overbidder) from acquiring the Property, as it is entitled to do under applicable non-bankruptcy law. Movant's interests in the Property are at risk of immediate diminution in value, including erosion of Movant's secured position by the continued accrual of overdue property tax interest and penalties. Under these circumstances, there has been a complete failure of adequate protection and good "cause" exists to lift the automatic stay under section 362(d)(1) of the Bankruptcy Code to allow Movant to exercise its state law rights.

Relatedly, as also discussed further below, the Debtor filed its bankruptcy case (in essence, a two-party dispute), to improperly frustrate Movant's exercise of its foreclosure rights and remedies and improperly exert leverage over Movant (as well as to sidestep SARE related bankruptcy requirements[7]) – and not to properly rehabilitate a debtor.[8] Indeed, the Debtor has admitted it has no intention and prospect of reorganizing. As such, the bankruptcy case was filed in bad faith and the automatic stay should be lifted for such other cause as well.

**C. <u>Relief from Stay Is Also Justified Under § 362(d)(2)</u>**

Section 362(d)(2) of the Bankruptcy Code provides that the automatic stay may be terminated, annulled, modified or conditioned upon a finding that the debtor does not have equity in the subject property and such property is not necessary to an effective reorganization.

---

[7] To the extent that the Affiliated Cases are SARE cases, the Court has the power and discretion to lift the automatic stay prior to the expiration of the 90-day period referenced in Code section 362(d)(3). *See, e.g., In re Duvar Apt.*, 205 B.R. at 200.

[8] It should be noted that the Ninth Circuit has eliminated the possibility of a debtor avoiding paying default interest under a loan agreement by proposing a cure under a plan. *See In re New Investments, Inc.*, 840 F.3d 1137 (9th Cir. 2016) (plain language of section 1123(d) compels holding that debtor cannot nullify obligation in loan agreement to pay post-default interest; finding *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988), to no longer be valid). That is, the Debtor cannot cite the avoidance of post-default interest and penalties as a legitimate, proper goal for its chapter 11 filing.

An "equity analysis" pursuant to section 362(d)(2) requires a determination of whether a debtor has any interest above the value of all liens. *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984); *La Jolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283, 289-90 (Bankr. S.D. Cal. 1982). In determining whether there is an excess of security so as to constitute equity, courts must decide whether the collateral should be valued on a going concern or liquidation basis. *See, e.g., In re Keystone Camera*, 126 B.R. 177, 184 (Bankr. D.N.J. 1991). Congress intended a flexible, case-by-case approach:

> [Section 361] does not specify how value is to be determined nor does it specify when it is to be determined. These matters are left to case-by-case interpretation an development…It is expected that the courts will apply the concept in light of the facts of each case and general equitable principles.

*In re Helionetics, Inc.*, 70 B.R. 433, 439 (Bankr. C.D. Cal. 1987) (quoting H.R.Rep. No. 595 at 339, 1978 U.S. Code. Cong. & Ad. News at 5787, 6295). In chapter 11 cases where there is no reasonable prospect of a reorganization, liquidation value is the more appropriate method for valuing collateral and determining whether the debtor has any equity in the collateral. *See e.g., In re Keystone Camera*, 126 B.R. at 184 (holding that liquidation value is appropriate where debtor ceased operations and attempted to revive itself through financing secured by priming lien); *In re Helionetics*, 70 B.R. at 439 (stating that although going concern value is appropriate when there is reason to believe a reorganization will be successful, other circumstances may warrant a different result).

As set forth and explained in the Day Declaration, the Property has a current fair market value of approximately $3 million, or in the Debtor's view, approximately $3.2 million – which is, at a minimum, $1 million less than what is owed to Movant under the Loan Documents. Additionally, as noted above, the Property is further encumbered by, among other interests, a junior deed of trust in the favor R.S. Lending relating to a putative debt of $1 million or more. Accordingly, based on the secured claim of Movant (as well as the junior secured claim of R.S. Lending) encumbering the Property, the Debtor does not have any equity in the Property.

Once the Debtor's lack of equity in the Property is demonstrated, the burden shifts to the Debtor to prove that the Property is necessary for an effective reorganization. *See* 11 U.S.C. §





PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

362(g)(2); *In re Swedeland Dev. Group., Inc.*, 16 F.3d 552, 557 (3d Cir. 1994). In determining whether the Property is necessary to the Debtor's reorganization, the Court must look to whether the Debtor has a reasonable probability of successfully reorganizing within a reasonable time. *See United Sav. v. Timbers of Inwood Forrest*, 484 U.S. 365, 375-76 (1988); *Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.),* 171 B .R. 71, 75 (B.A.P. 9th Cir. 1994) (debtor must prove that a proposed plan "is not patently unconfirmable and has a realistic chance of being confirmed"). Here, the Debtor is unable to meet its burden because there is no reasonable prospect that the Debtor will be able to propose a viable plan in this case. The Debtor is no longer operating any business and has no funds. Administrative expenses are accruing. Movant's security position is diminishing. The Debtor has even acknowledged it has no intention of reorganizing.

Accordingly, Movant is entitled to relief from the stay under Code section 362(d)(2).

### D. Alternatively, the Chapter 11 Case Should Be Dismissed for "Cause" Under § 1112(b)

Alternatively, to the extent that the Court is not inclined to grant relief from stay in favor of Movant, the Chapter 11 Case (as well as the Affiliated Cases as set forth in the applicable motions to dismiss filed by Genesis) should be dismissed for "cause" under section 1112(b) of the Bankruptcy Code.

If a party-in-interest (such as Movant) establishes the existence of "cause," the Court must -- absent unusual circumstances -- dismiss or convert the case, whichever is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b); *see In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (section 1112 limits the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *see also In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal such that this Court has no choice, and no discretion in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under [section] 1112(b)(4)." (emphasis in original)); *In re Rubenstein*, 71 B.R. 777, 778 (B.A.P. 9th Cir. 1987) (same).

Section 1112(b) of the Bankruptcy Code provides a list of 16 non-exclusive grounds for dismissal or conversion on the basis of "cause." 11 U.S.C. § 1112(b)(4)(A) – (P). These grounds



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

are not meant to be exhaustive, but rather to be illustrative in assisting courts in determining whether "cause" exists under section 1112(b). *Gateway*, 374 B.R. at 561; *In re Consolidated Pioneer Mortgage Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) ("The enumerated causes are not exhaustive, and 'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases'"). One court concluded that: "it has been established since the adoption of Section 1112 that Congress used the word 'includes' purposefully and that the grounds listed in the statute are non-exclusive."[9] *In re Ameribuild Constr. Mgmt.*, 399 B.R. 129, 131 (Bankr. S.D.N.Y. 2009). Because the grounds listed in the statute are non-exclusive, courts should and, in fact, often do "consider other factors" in determining whether "cause" has been shown. *Gateway*, 374 B.R. at 561; *In re Products Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008) (noting that courts have "wide discretion" to determine what constitutes "cause" under section 1112(b)) (citations omitted).

In this case, at least several distinct grounds for "cause" exist including (a) bad faith filing and prosecution of the bankruptcy case; (b) the Debtor's inability to effectuate a plan (11 U.S.C. § 1112(b)(2)(A)); and (c) diminution of the estate and the absence of a reasonable likelihood of rehabilitation (11 U.S.C. § 1112(b)(4)(A)).

**1. Debtor's Bad Faith Is a Basis for Dismissal Under Section 1112(b)(2)**

Lack of good faith in filing a chapter 11 petition establishes cause for dismissal. 11 U.S.C. § 1112(b); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). In the context of filing a petition, "good faith" is a term of art. "Though it suggests that the debtor's subjective intent is determinative, this is not the case. Instead, the 'good faith' filing requirement . . . [is intended] to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *Id.* "[T]he test is whether a debtor is attempting to unreasonably deter or harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Id.* (citing *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)). "The purpose of the good faith requirement is to ensure that the hardships imposed on creditors are justified by fulfillment of statutory objectives." *In re Liberate Technologies*, 314 B.R. 206, 211 (Bankr. N.D. Cal. 2004).

[9] Under section 102(3), the Bankruptcy Code's Rules of Construction provide that the term "includes" is not limiting.





PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> It is easy to see why courts have required Chapter 11 petitioners to act within the scope of the bankruptcy laws to further a valid reorganizational purpose. Chapter 11 vests petitioners with considerable powers—the automatic stay, the exclusive right to propose a reorganization plan, the discharge of debts, etc.—that can impose significant hardship on particular creditors. When financially troubled petitioners seek a chance to remain in business, the exercise of those powers is justified. But this is not so when a petitioner's aims lie outside those of the Bankruptcy Code.

*Id*. (quoting *In re SGL Carbon Corp*., 200 F.3d 154, 165-66 (3d Cir. 1999)).

Whether a petition is filed in good faith is to be determined upon consideration of all the facts and circumstances of the case. *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.),* 314 F.3d 1070, 1075 (9th Cir. 2002); *In re Marsch*, 36 F.3d at 828. Once the issue is raised, it is the debtor's burden to prove that its petition was filed in good faith. *Leavitt v. Soto (In re Leavitt),* 209 B.R. 935, 940 (BAP 9th Cir. 1997), *aff'd*, 171 F.3d 1219 (9th Cir. 1999); *SGL Carbon Corp*., 200 F.3d at 162 n.10. Under the facts of this case, the Debtor should find good faith to be lacking.

To determine whether a debtor has filed a petition in bad faith, courts within the Ninth Circuit typically weigh a variety of circumstantial factors such as whether:

> (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

*St. Paul Self Storage LP v. Port Authority (In re St. Paul Self Storage LP)*, 185 B.R. 580, 582-83 (BAP 9th Cir. 1995) (citing *In re Stolrow's Inc*., 84 B.R. 167 (BAP 9th Cir. 1988)); *see also Leavitt*, 209 B.R. at 940.

As explained above, the Debtor's only asset is the Property – which was in midst of foreclosure until the Debtor improperly filed the Chapter 11 Case. Further, there is no ongoing business, and the Debtor has no funds or access to sufficient funds to sustain a chapter 11 plan, to make adequate protection payments and/or to reorganize. And with very few unsecured creditors involved given the nature of the Debtor's business, the Chapter 11 Case is, in essence, a two party dispute between the Debtor and Movant, which dispute should be resolved through state law means.

Relatedly, as discussed above, the Debtor has failed to comply with postpetition bankruptcy requirements and engaged in bad faith stonewalling against Movant, which together further evidence the Debtor's intent to misuse and abuse the bankruptcy process for improper purposes.

Further, the Debtor's bad faith is demonstrated by the Debtor's improper attempt to sidestep SARE related bankruptcy requirements. To prove that separate properties –like the Affiliated Debtors' real properties– constitute "single asset real estate," it must be shown: "(1) that there is a single property or project, other than residential real property with fewer than 4 residential units; (2) that generates substantially all of the gross income of a debtor; and (3) that no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." *In re Georgina, LLC*, 2016 Bankr. LEXIS 4212, *3 (Bankr. C.D. Cal. Dec. 7, 2016) (J. Barash) (emphasis added, citing *In re Meruelo Maddux Properties, Inc.*, 667 F.3d 1072, 1076 (9th Cir. 2012). To be part of a "single project" "the properties must be linked together in some 'common scheme' governing the present use of the properties." *Georgina, LLC*, 2016 Bankr. LEXIS 4212, at *3, *6 n.2 (citing *In re Hassen Imports P'ship*, 466 B.R. 492, 507 (Bankr. C.D. Cal. 2012); that the real properties do not share a common border is "not determinative in and of themselves"). Courts in the Ninth Circuit have considered various factors when determining if multiple properties constitute a single project, including (1) the use of the properties; (2) the circumstances surrounding the acquisition of the properties, including the time of the acquisition and the funds used to acquire the properties; (3) the location of the properties and proximity of the properties to one another; and (4) any plans for future development, sale or abandonment of the properties. *Id.*, at *4; *Hassen Imports P'ship*, 466 B.R. at 507.

As discussed above, the following circumstances strongly support the conclusion that the Affiliated Cases are SARE cases: (i) each real property (owned by the respective Affiliated Debtor) was acquired and is being held for development or sale by Mr. Yohai and/or his affiliates, and not for any other business purpose; (ii) no other business is being conducted on these real properties, which generate substantially all of the gross income of the Affiliated Debtors; (iii) Mr. Yohai is the sponsor and manager of, and ultimately controls, each of these four developments; (iv) Mr. Yohai, through his representations, principal sponsorship and executed guaranties in favor of Genesis,





PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

procured funding for each development from Genesis, thus intertwining and connecting the financing for these four developments; and (v) Mr. Yohai has been marketing for sale the residences built or to be built on the real properties as common developments materialized by Mr. Yohai and/or his affiliates. *See also In re Philmont Development Co.*, 181 B.R. 220, 224 (Bankr. E.D. Pa. 1995) (stressing that while debtor might not have treated financing of construction of houses as a single project, the bank did); *In re Pioneer Austin East Development I, Ltd.*, 2010 Bankr. LEXIS 2160, *4 (Bankr. N.D. Tex. July 1, 2010) (definition of SARE "recognizes that real estate development can be completed in separate projects, comprised of several tracts or parcels of land, and still constitute a single property for the purpose of single asset real estate cases"); *In re Light Foot Group LLC*, 2011 Bankr. LEXIS 4399, *10 (Bankr. D.Md. Nov. 10, 2011) ("the fact that Debtor's residential rental business takes place over five tracts of land acquired at different times does not change the nature of the case"); *In re Harmony Holdings, LLC*, 2008 Bankr. LEXIS 2106, *4 (Bankr. D. S.C. 2008) ("The real property is a single project despite the fact that it was acquired as several tracts of land, has been partly developed, and is owned by two entities," where all functions and responsibilities of ownership were conducted through one entity).

Notwithstanding the foregoing, the Debtor and other Affiliated Debtors failed to designate the Affiliated Cases as SARE cases. The Affiliated Debtors' mis-identification of the Affiliated Cases should be recognized by the Court as an improper effort to avoid the special statutory strictures provided in favor of secured lenders in SARE cases like Movant.

In sum, the Debtor's bad faith provides good cause for dismissal of the Chapter 11 Case.

**2. Inability to Effectuate a Plan is a Basis for Dismissal Under Section 1112(b)(2)**

Under section 1112(b)(2)(B) of the Bankruptcy Code, the ability of a debtor to confirm a plan in a timely fashion is a key consideration in determining whether dismissal or conversion is in the best interests of creditors. *See* 11 U.S.C. § 1112(b)(2)(B).

As addressed above in detail, the Debtor has no ability or resources, or indeed intention, to effectuate a viable plan or other reorganization. This matter is a two-party dispute between an insolvent Debtor and a substantially undersecured lender; the Debtor will be unable to feasibly

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

address Movant's secured claim. Movant should be allowed to pursue the rights to which it is entitled under state law.

**3. Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation**

Under section 1112(b)(1) of the Bankruptcy Code, conversion or dismissal is *mandatory* upon a finding of "cause." *See* 11 U.S.C. § 1112(b)(1) (use of the word "shall" instead of "may"). A list of factors that constitute "cause" for dismissal is set forth under section 1112(b)(4). Cause exists to dismiss the instant bankruptcy case because there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(2)(B)(4)(A); *Johnston v. Gem Dev. Co, (In re Johnston*) 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992); *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994). Where the position of creditors is continuing to erode and creditors are not likely to be satisfied if the case remained in chapter 11, sufficient grounds for dismissal (or conversion) exist. *See In re Johnston*, 149 B.R. at 162; *see also Rosenberg Real Estate Equity Fund v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 424 (B.A.P. 9th Cir. 1988); *Fossum v. Federal Land Bank* (*In re Fossum)*, 764 F.2d 520, 521-22 (8th Cir. 1985).

As explained above, the Debtor has no money or operations to fund the administration of this case or the preservation or disposition of the Property. Further, the Debtor has no strategy, aside from precluding Movant from continuing to exercise its rights as a secured creditor under applicable non-bankruptcy law, which proceedings were commenced prepetition. Movant's interests in the Property are at risk of immediate diminution in value, including deterioration of Movant's secured position by the continued accrual of overdue property tax interest and penalties. In Debtor's counsel's own words, the Debtor's Property is "not a property that we can make work" and there are no outside-investor "dreamers" out there. There is no legitimate purpose being served in the Chapter 11 Case, while Movant continues to suffer unfair prejudice and delay.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**V.**

**CONCLUSION**

For the reasons set forth above, Movant requests that the Court enter an order: (i) ruling and reaffirming that the Debtor's Chapter 11 Case has been previously dismissed; (ii) alternatively, terminating the automatic stay as it applies to the Debtor, to permit Movant to exercise all of its rights and remedies against the Property under the Loan Documents, including foreclosure; (iii) alternatively, dismissing the Chapter 11 Case under § 1112(b) with prejudice; and (iv) granting such other and further relief as the Court deems necessary and appropriate.

Dated: February 1, 2017

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey W. Dulberg*
Richard M. Pachulski
Jeffrey W. Dulberg

Attorneys for Genesis Capital, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**DECLARATION OF JOHN DAY**

I, John Day, declare as follows:

1. I am the Chief Legal Officer and Chief Risk Officer of Genesis Capital, LLC (together with its affiliates, "Genesis" or "Movant"). I joined Genesis as General Counsel in July 2015; I have been the Chief Legal Officer and Chief Risk Officer since September 2016. In my capacity with Genesis, I have general knowledge of the books and records of Genesis, and am familiar with Genesis' business and operations.

2. I submit this Declaration in support of the *Notice of Motion and Motion of Genesis Capital for Relief from Automatic Stay Under 11 U.S.C. § 362 or, Alternatively, Motion for Order Dismissing Chapter 11 Case, and Granting Related Relief* (the "Motion"). Capitalized terms not defined herein have the meanings used in the Motion. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of Genesis' books and records, relevant documents and other information prepared or collected by Genesis' employees, agents and/or advisors, or my opinion based on my experience with Genesis. In making my statements based on my review of Genesis' books and records, relevant documents and other information prepared or collected by Genesis' employees, agents and advisors, I have relied upon these persons accurately recording, preparing or collecting any such documentation and other information. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of Genesis.

**Genesis' Secured Claims**

3. In February 2016, the Debtor executed (i) a Promissory Note in favor of Genesis Capital Master Fund II, LLC in the principal amount of $3,737,100; (ii) a Business Loan Agreement (Loan No. 2015000441), dated as of February 16, 2016, with Genesis (the "Loan Agreement"); and (iii) a Deed of Trust against the Property recorded in Los Angeles County (Document No. 20160175893) (the "DOT" and collectively with other loan related documents, the "Loan Documents"). Pursuant to the Loan Documents, the Debtor borrowed $3,737,100 from Genesis, with a maturity date of March 1, 2017. The Debtor's obligations under the Loan Documents are

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

secured by the DOT against the Property and are also absolutely and unconditionally guarantied by the Debtor's principal and sole manager, Jeffrey Yohai, pursuant to a Commercial Guaranty (the "Yohai Guaranty"). True and correct copies of the Loan Agreement, DOT, and Yohai Guaranty are attached hereto as **Exhibit A**.

4. The Debtor subsequently defaulted under the Loan Documents, and a Notice of Default was recorded in Los Angeles County on August 30, 2016. As of December 15, 2016, the total payoff amount due under the Loan Documents was no less than $4.224 million. Movant's claim continues to accrue daily interest of approximately $2,075 (or approximately $62,250 per month). A trustee sale of the Property was scheduled for December 30, 2016.

**The Debtor's Property**

5. The Property consists of a lot at 2401 Nottingham Avenue, Los Angeles, on which construction of a residential house was started prepetition by Jeffrey Yohai (and/or his affiliates or agents), which had been expected to be sold by Mr. Yohai to a third party upon or prior to construction completion. The purchase, construction and/or completion of this project were to be funded (in whole or in part) by the loan proceeds from Movant pursuant to the Loan Documents.

6. In my capacities at Genesis, among other duties, I review and/or assess various aspects of the loans funded by Genesis, including the loans of Jeffrey Yohai with respect to the Property and the real properties of the other Affiliated Debtors. As a matter of practice, Genesis employees consult with local real estate brokers to assess the current fair market value of Genesis' collateral properties. Based on Genesis' consultation with a local broker, Genesis believes that the Property has a current fair market value of approximately $3 million – which is more than $1 million less than what is owed to Genesis under the Loan Documents. I am informed and understand that the Debtor itself has admitted that it lacks any equity in the Property. As part of its chapter 11 petition package (Docket No. 1), in its list of creditors with the 20 largest unsecured claims (Form 204), the Debtor listed the Property as having a value of $3.2 million, and thus, according to the Debtor, Movant had a $4.25 million secured claim and a $1.05 million unsecured deficiency claim.

7. Based on a title report obtained by Genesis and/or its agents (a true and correct copy of which is attached hereto as **Exhibit B**) and public online information available from the Los

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

Angeles County Treasurer and Tax Collector (https://vcheck.ttc.lacounty.gov/proptax.php?page=installments&) (a true and correct copy of which is attached hereto as **Exhibit C**), Genesis is informed and believes that the Property is encumbered by (i) a junior deed of trust (junior to the DOT recorded by Genesis) in favor of RS Lending, Inc. in the principal amount of $1,000,000, (ii) various mechanic's liens, and (iii) Los Angeles County property taxes of at least $21,564 (with interest and/or penalties continuing to accrue).

**Yohai's Single Commercial Project Including the Debtor's Property**

8. Based on entity operating agreements and other information and documents provided to Genesis by Jeffrey Yohai in connection with the underwriting and loan application processes at Genesis (the "Loan Processes"), each Affiliated Debtor is controlled by Jeffrey Yohai, as the sponsor for these real estate developments and manager of the Affiliated Debtors; and each Affiliated Debtor owns a parcel of real property with one or more residential units constructed thereon by Mr. Yohai and/or his affiliates, other than the Mt. Yohai property which is, as of the petition date, raw land, which Mr. Yohai planned to develop as well.

9. Based on documents and information provided to Genesis by Mr. Yohai as part of or related to the Loan Processes, Genesis is informed and believes that:

i. each real property (owned by the respective Affiliated Debtor) was acquired and is being held for development or sale by Mr. Yohai and/or his affiliates, and not for any other business purpose; and no other business is being conducted on these real properties, which generate substantially all of the gross income of the Affiliated Debtors;

ii. Mr. Yohai is the sponsor and manager of, and ultimately controls, each of these four developments;

iii. Mr. Yohai, through his underwriting related representations, principal sponsorship and executed guaranties in favor of Genesis, procured funding for each development from Genesis. Thus, the financing for the four developments of the Affiliated Debtors is substantively connected and intertwined (*e.g.*, Mr. Yohai guaranties, cross-defaults, *etc.*).



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iv. Mr. Yohai has been marketing for sale the residences built or to be built on the real properties as common developments materialized by Mr. Yohai and/or his affiliates. A true and correct copy of a marketing website page affiliated with Mr. Yohai (http://www.marinw.com/new-index-1/) is attached hereto as **Exhibit B**.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of February 2017 at Woodland Hills, California.

John Day

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**DECLARATION OF JEFFREY W. DULBERG**

I, Jeffrey W. Dulberg, declare as follows:

1. I am an attorney duly admitted to practice by the State of California and before this Court.

2. I am a partner of the Firm and am duly admitted and licensed to practice in the State of California and to practice before this Court.

3. I submit this Declaration in support of the *Notice of Motion and Motion of Genesis Capital for Relief from Automatic Stay Under 11 U.S.C. § 362 or, Alternatively, Motion for Order Dismissing Chapter 11 Case, and Granting Related Relief* (the "Motion"). Capitalized terms not defined herein have the meanings used in the Motion.

4. Attached hereto as **Exhibit D** is a copy of the transcript of the status conference held before the Court on January 11, 2017, in the Affiliated Debtors' cases.

5. Subsequent to the Affiliated Cases filings, the Debtor engaged in bad faith stonewalling and other dilatory conduct, to drag the cases along at Genesis' expense. In particular, promptly following the filing of the cases, on December 28, 2016, I reached out to counsel for the Debtors in an effort to begin a dialogue. Rather than Mr. Yohai, however, the Debtor's counsel informed me that Mr. Matthew Browndorf of Wilson Keadjian Browndorf LLP, a New York based attorney with no apparent connection to the Debtors, would be the Debtors' representative for any negotiations.

6. Naturally, I was surprised to learn that an outside party who had yet to seek Court approval to represent the Debtor – and still has not – would be speaking for the Debtor. I inquired of Messrs. Forsythe and Browndorf specifically as to the "bona fides" of Mr. Browndorf – *did he have specific authority to speak for the Debtors, not to mention, authority to bind them*? Messrs. Browndorf and Forsythe repeatedly assured me that Mr. Browndorf was so authorized although they were unable or unwilling to produce anything in writing to this effect.

7. Nonetheless, I proceeded in the utmost good faith to engage in discussions with Mr. Browndorf. For approximately two weeks, through January 13, 2017, I engaged in settlement

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

discussions with Mr. Browndorf with respect to each of the Debtors. Although led to believe that Mr. Browndorf had the authority to negotiate for the Debtors in good faith, as it turned out, this was untrue. After devoting many hours to negotiations, some two weeks after Mr. Browndorf initiated the discussions, I came to learn (a) Mr. Yohai had not authorized Mr. Browndorf to represent, much less bind, him or the Debtors and (b) Mr. Yohai "vehemently" disagreed with Mr. Browndorf's assessment of certain of the Debtors' properties and would not honor the tentative agreement reached with respect to 2401 Nottingham. Despite this regretful turn of events, I persisted in good faith to attempt to continue negotiations with the Debtors through Mr. Forsythe. I was assured by Mr. Forsythe that the Debtors would "pick up the pieces" and re-start a good faith discussion; on the contrary, neither Mr. Forsythe nor Mr. Yohai have been heard from since.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 1st day of February, 2017, at Los Angeles, California

*/s/ Jeffrey W. Dulberg*
Jeffrey W. Dulberg

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

# BUSINESS LOAN AGREEMENT

**Principal: $3,737,100.00 Loan Date: 2/16/2016 Maturity: 3/1/2017 Loan No.: 2015000441**

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** **2401 Nottingham, LLC**
**a California Limited Liability Company**
**3991 MacArthur Blvd, Ste 125**
**Newport Beach, CA 92660**

**Lender:** **Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender**
**ATTENTION LENDING DEPARTMENT**
**21650 Oxnard Street, Suite 1700**
**Woodland Hills , CA 91367**
**(818) 661-1778**

**THIS BUSINESS LOAN AGREEMENT ("Agreement") dated 2/16/2016, is made and executed between 2401 Nottingham, LLC, a California Limited Liability Company ("Borrower") and Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.**

**TERM.** This Agreement shall be effective as of 2/16/2016 and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until 3/1/2017 ("Maturity Date").

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a Limited Liability Company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at **3991 MacArthur Blvd, Ste 125, Newport Beach, CA 92660**. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps

its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the

properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| **Jeffrey Yohai** | **$3,737,100.00** |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation or guideline, or the interpretation or application of any thereof by any court or administrative or governmental authority (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would (A) increase the cost to Lender for extending or maintaining the credit facilities to which this Agreement relates, (B) reduce the amounts payable to Lender under this Agreement or the Related Documents, or (C) reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower,

which explanation and calculations shall be conclusive in the absence of manifest error.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness; Liens; Sale and Transfer.** (1) Engage in the Sale or Transfer of all or any portion of the Property, or any interest in the Property (except as allowed as Permitted Liens or otherwise by this Agreement), (2) sell with recourse any of Borrower's accounts, except to Lender, (3) grant any junior or senior security interest in, or mortgage of, all or any portion of the Property, or (4) enter into any agreement with any Person other than Lender that prohibits Borrower from granting any security interest in, or mortgage of, all or any portion of the Property. A "Sale or Transfer" means the conveyance of the Property or any right, title or interest in the Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property, and if Borrower is a corporation, partnership or limited liability company, a Sale of Transfer also includes (a) any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Borrower or (b) any change in management of such entity, even if the change in management entails a change in ownership of less than twenty-five percent (25%). Lender's approval shall not be unreasonably withheld.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Except as expressly stated hereafter, loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Any regular monthly payment under the Note is not paid when due, or any other amount secured by the Related Documents (including but not limited to any payment of principal or interest due on the Maturity Date, as defined in the Note) is not paid so that it is received by Lender when due.

**Other Defaults.** Borrower fails to comply with or to perform any term, obligation, covenant or condition contained in this Assignment that is not otherwise listed as an Event of Default hereunder (a "General Default").

**Cross Default.** A default (following the expiration of all applicable notice and cure periods) occurs under any of the other Related Documents.

**Indebtedness; Liens; Sale or Transfer.** (1) If Borrower engages in the Sale or Transfer (as defined in the Deed of Trust) of all or any portion of the Property, or any interest in the Property (except as otherwise permitted by this Agreement), (2) if Borrower sells with recourse any of Borrower's accounts, except to Lender, (3) if Borrower grants any junior or senior security interest in, or mortgage of, all or any portion of the Property, or (4) if Borrower enters into any agreement with any Person other than Lender that prohibits Borrower from granting any security interest in, or mortgage of, all or any portion of the Property.

**Default in Favor of Third Parties.** Should Borrower default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay the Indebtedness or Borrower's ability to perform Borrower's obligations under the Loan Agreement, this Assignment or any of the other Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under the Loan Agreement, this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment, the Loan Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member, partner or equity holder withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, partner or equity

holder of Borrower, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower under the terms of any other agreement between Borrower and Lender, or any Affiliate of Borrower and Lender, that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later.

**Condemnation.** All or any material portion of the Collateral is condemned, seized, or appropriated without compensation, and Borrower does not within thirty (30) days after such condemnation, seizure, or appropriation, initiate and diligently prosecute appropriate action to contest in good faith the validity of such condemnation, seizure, or appropriation.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness, or if any guarantor of the Loan is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property.

**Judgment.** A judgment or judgments for the payment of money rendered against the Borrower or any Guarantor in excess of $50,000.00 in the aggregate, and any such judgment remains unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution.

**Lien.** Any lien (including mechanics lien) is issued or levied on all or any portion of the Property and Borrower has not cured within fourteen (14) days.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any General Default is curable and if Borrower has not been given a notice of a similar General Default within the preceding six (6) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such General Default: (1) cure the General Default within five (5) days; or (2) if the cure requires more than five (5) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the General Default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical; provided that under no circumstances shall Borrower have more than thirty (30) days to cure any General Default.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**NOTICES.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when sent by electronic mail prior to 5:00 p.m. (Pacific Standard Time or Pacific Daylight Time as applicable, on a Business Day) (unless otherwise required by law) provided that a copy is simultaneously sent by one of the other permitted means of giving notice set forth in this section, or one (1) Business Day after being deposited with a nationally recognized overnight courier, directed to the addresses shown near the beginning of this Assignment. Borrower requests that copies of any notices of default and sale be directed to Borrower's address shown near the beginning of this Assignment. All copies of notices of foreclosure from the holder of any lien which has priority over this Assignment shall be sent to Lender's address, as shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration; Jury Waiver. Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party; provided, however, in the event of an Event of Default by Borrower, Lender shall have the unilateral right to exercise its remedies in its sole and absolute discretion, and under such circumstances, Lender can choose in its sole discretion to pursue arbitration or not and Borrower hereby waives any right to enforce the arbitration provisions of this Agreement if contrary to the choice of Lender. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of**

**trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision. Any arbitration, judicial reference or trial by a judge of any dispute, claim or controversy between the parties hereto will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver"). Regardless of anything else in this Section, the validity and effect of the Class Action Waiver may be determined only by a court or referee and not by an arbitrator. The parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the parties and is nonseverable from the agreement to arbitrate all disputes, claims and controversies between the parties. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated. WITHOUT INTENDING IN ANY WAY TO LIMIT THIS DISPUTE RESOLUTION PROVISION, THE PARTIES WAIVE TRIAL BY JURY IN RESPECT OF ANY AND ALL "DISPUTES" AND ANY ACTION ON ANY "DISPUTE." THIS WAIVER SHALL APPLY TO THE EXTENT ANY "DISPUTE" IS NOT SUBMITTED TO JUDICIAL REFERENCE OR ARBITRATION, OR IS DEEMED BY THE ARBITRATOR, REFEREE OR ANY COURT WITH JURISDICTION TO BE NOT REQUIRED TO BE DETERMINED BY JUDICIAL REFERENCE OR ARBITRATION, OR NOT SUSCEPTIBLE OF BEING SO DETERMINED. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES AND THE PARTIES HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE LOAN DOCUMENTS. THE PARTIES ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. BORROWER FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS LOAN AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. WHETHER THE CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.**

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law. This Agreement will be governed by the laws of the State of California without regard to its conflicts of law provisions.**

**Jurisdiction. WITH RESPECT TO ANY CLAIM OR ACTION ARISING UNDER, THIS AGREEMENT, OR THE OTHER RELATED DOCUMENTS, BORROWER (A) IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA AND THE UNITED STATES DISTRICT COURT LOCATED IN LOS ANGELES COUNTY, CALIFORNIA, AND APPELLATE COURTS FROM ANY THEREOF, AND (B) IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE OTHER LOAN DOCUMENTS BROUGHT IN ANY SUCH COURT, IRREVOCABLY WAIVES ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS AGREEMENT, OR THE OTHER RELATED DOCUMENTS WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and

signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf under the terms and conditions of this Agreement.

**Affiliate.** The word "Affiliate" means any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Borrower, or that has a common guarantor with Borrower. "Control," for purposes of this definition, means direct or indirect ownership or control of more than five percent (5%) of the voting interests of the subject entity. "Person," for purposes of this definition, means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means **2401 Nottingham, LLC, a California Limited Liability Company** and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Deed of Trust.** The words "Deed of Trust" means the Deed of Trust, dated concurrently with this Agreement, encumbering the Property and other assets and rights therein provided.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated 2/16/2016 and executed by 2401 Nottingham, LLC, a California Limited Liability Company in the principal amount of $3,737,100.00 together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED 2/16/2016.**

**BORROWER: 2401 Nottingham, LLC, a California Limited Liability Company**

**By:** ______________________________
**Jeffrey Yohai, Sole Member**

**LENDER:**
**Genesis Capital Master Fund II, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY,**
**A CALIFORNIA FINANCE LENDER**

**By:** ______________________________

**Its:** President

**This page is part of your document - DO NOT DISCARD**

# 20160175893

Pages: 0017

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/18/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 106.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 106.00 |

LEADSHEET

201602180220002

**00011728832**

007388260

**SEQ:**
**16**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E523477

T24

2

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO:

Genesis Capital Master Fund II
Attn. Lending Dept
21650 Oxnard St., Ste 1700
Woodland Hills CA 91367

02/18/2016
*20160175893*

SPACE ABOVE THIS LINE IS RESERVED FOR RECORDER'S USE

TITLE

# DEED OF TRUST

3

**WHEN RECORDED MAIL TO:**
Genesis Capital Master Fund II, LLC, a Delaware
Limited Liability Company, a California Finance Lender
(60DBO-35925)
ATTENTION LENDING DEPARTMENT
21650 Oxnard Street, Suite 1700
Woodland Hills, CA 91367

APN(S): 5588-003-012

10379549

FOR RECORDER'S USE ONLY

# DEED OF TRUST

**THIS INSTRUMENT COVERS GOODS THAT ARE OR WILL BECOME FIXTURES ON THE DESCRIBED REAL PROPERTY AND SHOULD BE FILED FOR RECORD IN THE REAL PROPERTY RECORDS WHERE DEEDS OF TRUST ON REAL ESTATE ARE RECORDED. THIS INSTRUMENT SHOULD ALSO BE INDEXED AS A UNIFORM COMMERCIAL CODE FINANCING STATEMENT COVERING GOODS THAT ARE OR WILL BECOME FIXTURES ON THE DESCRIBED REAL PROPERTY, THE MAILING ADDRESSES OF THE SECURED PARTY AND THE DEBTOR ARE WITHIN.**

**THIS INSTRUMENT SECURES FUTURE ADVANCES.**

**THIS DEED OF TRUST is dated 2/16/2016, by 2401 Nottingham, LLC, a California Limited Liability Company whose address is 3991 MacArthur Blvd, Ste 125, Newport Beach, CA 92660, ("Trustor") to Provident Title Company (referred to below as "Trustee") for the benefit of Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender, whose address is: 21650 Oxnard Street, Suite 1700, Woodland Hills, CA 91367, (referred to below sometimes as "Lender" and sometimes as "Beneficiary").**

**CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary,** all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Los Angeles County, State of California:**

**See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.**

**The Real Property or its address is commonly known as 2401 Nottingham Avenue, Los Angeles, CA 90027.**

**The Assessor's Parcel Number for the Real Property is 5588-003-012.**

4

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF A LOAN IN A MAXIMUM PRINCIPAL AMOUNT OF $3,737,100.00 DOLLARS AND THE OTHER INDEBTEDNESS (INCLUDING, WITHOUT LIMITATION, ANY FUTURE ADVANCES UNDER THE LOAN AGREEMENT) AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE LOAN AGREEMENT, THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Loan Agreement, the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property, and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any applicable laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of Hazardous Substances on, under, about or from the Property, including, without limitation, if occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. Trustor and Lender agree that: (a) this section is intended as Lender's written request for information (and Trustor's response) concerning the environmental condition of the real property security as required by California Code of Civil Procedure Section 726.5; and (b) each provision in this section (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the real property security is intended by Lender and Trustor to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736, and as such it is expressly understood that Trustor's duty to indemnify Lender hereunder shall survive: (i) any judicial or non-judicial foreclosure under this Deed of Trust, or transfer of the Property in lieu thereof; (ii) the release and reconveyance or cancellation of this Deed of Trust; and (iii) the satisfaction of all of Trustor's obligations under the Loan Agreement, this Deed of Trust and the other Related Documents. Pursuant to California Code of Civil Procedure Section 736, Lender's action for recovery of damages or enforcement of this section shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d and 726(b) of the California Code of Civil Procedure. Lender may waive its lien against the Property or any portion thereof, whether fixtures or personal property, to the extent such property is found to be "environmentally impaired" or an "affected parcel" in accordance with California Code of Civil Procedure Section 726.5 and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency and any costs, fees, expenses and damages incurred by Lender as the result of the Property being "environmentally impaired", including, but not limited to, seeking an attachment order under California Code of Civil Procedure Section 483.010. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property (in a manner inconsistent with the Plans and Specifications, if any) without Lender's prior written consent.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter

5

in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon nor leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE OR ENCUMBRANCE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the Sale or Transfer, without Lender's prior written consent, of all or any part of the Real Property, or of any direct or indirect interest in the Real Property A "Sale or Transfer" means the sale, transfer, mortgage, assignment, encumbrance, lease or conveyance of Real Property or any direct or indirect right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest, lease-option contract, mortgage, deed of trust or by sale, assignment, or transfer of any direct or indirect beneficial interest in or to any land trust holding title to the Real Property, or by any other method of sale, transfer, mortgage, assignment, encumbrance, lease or conveyance of a direct or indirect interest in the Real Property. If Trustor is a corporation, partnership or limited liability company, a "Sale or Transfer" also includes (a) any change in ownership, directly or indirectly, of more than twenty-five percent (25%) of the direct or indirect voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor, or (b) any change in management of such entity, even if the change in management entails a change in ownership of less than twenty-five percent (25%).

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under the Loan Agreement, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

6

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**Disclosure re Hazardous Insurance Coverage.** Lender hereby notifies Trustor of the provisions of Section 2955.5(a) of the California Civil Code, which reads as follows: "No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property." This disclosure is being made by Lender to Trustor pursuant to Section 2955.5(b) of the California Civil Code. Trustor hereby acknowledges receipt of this disclosure and acknowledges that this disclosure has been made by Lender before execution of any note or security document evidencing or securing the Loan.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the Default Rate from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon an Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on all or any portion of the Property Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS; FIXTURE FILING.** The following provisions relating to this Deed of Trust as a security

1

agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes Personal Property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code of the State of California (as amended from time to time, the "**Uniform Commercial Code**").

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property Upon an Event of Default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**Fixture Filing.** As to all of the Personal Property which is or which hereafter becomes a "fixture" under applicable law, it is intended by Trustor and Lender that this Deed of Trust constitutes a fixture filing filed with the real estate records of the County in which the Real Property is located, under the Uniform Commercial Code. For purposes of this fixture filing, the "Debtor" is the Trustor and the "Secured Party" is the Lender. A description of the land which relates to the fixtures is set forth in Exhibit A attached hereto.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Loan Agreement, the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Any regular monthly payment under the Note is not paid when due, or any other amount secured by this Deed of Trust (including but not limited to any payment of principal or interest due on the Maturity Date, as defined in the Note, any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien) is not paid so that it is received by Lender when due.

**Other Defaults.** Trustor fails to comply with or to perform any term, obligation, covenant or condition contained in this Deed of Trust that is not otherwise listed as an Event of Default hereunder (a "General Default")

**Cross Default.** A default (following the expiration of all applicable notice and cure periods) occurs under any of the other Related Documents.

**Indebtedness; Liens; Sale or Transfer.** (1) If Trustor engages in the Sale or Transfer of all or any portion of the Property, or any interest in the Property (except as otherwise permitted by this Agreement), (2) if Trustor sells with recourse any of Trustor's accounts, except to Lender, (3) if Trustor grants any junior or senior security interest in, or mortgage of, all or any portion of the Property, or (4) if Trustor enters into any agreement with any Person other than Lender that prohibits Trustor from granting any security interest in, or mortgage of, all or any portion of the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or Trustor's ability to perform Trustor's obligations under the Loan Agreement, this Deed of Trust or any of the other Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under the Loan Agreement, this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust, the Loan Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor (regardless of whether election to continue is made), any member, partner, or equity holder withdraws from Trustor, or any other termination of Trustor's existence as a going business or the death of any member, partner or equity holder of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of

8

creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender, or any Affiliate of Trustor and Lender, that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Condemnation.** All or any material portion of the Collateral is condemned, seized, or appropriated without compensation, and Trustor does not within thirty (30) days after such condemnation, seizure, or appropriation, initiate and diligently prosecute appropriate action to contest in good faith the validity of such condemnation, seizure, or appropriation.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty, or if any guarantor of the Loan is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property.

**Judgment.** A judgment or judgments for the payment of money rendered against Trustor or any Guarantor in excess of $50,000.00 in the aggregate, and any such judgment remains unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution.

**Lien.** Any lien (including mechanics lien) is issued or levied on all or any portion of the Property and Trustor has not cured within fourteen (14) days.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any General Default is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding six (6) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such General Default: (1) cures the General Default within five (5) days; or (2) if the cure requires more than five (5) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the General Default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical, provided that under no circumstances shall Trustor have more than thirty (30) days to cure any General Default.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Foreclosure by Sale.** Lender may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to any purchaser of the Property its deed conveying the Property so sold, but without any covenant or warranty, express or implied The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property

9

and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust, the Note, the Loan Agreement, the other Related Documents or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Default Rate (as defined in the Loan Agreement) from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of the county in which the Real Property is located. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when sent by electronic mail prior to 5:00 p.m. (Pacific Standard Time or Pacific Daylight Time as applicable, on a Business Day) (unless otherwise required by law) provided that a copy is simultaneously sent by one of the other permitted means of giving notice set forth in this section, or one (1) Business Day after being deposited with a nationally recognized overnight courier, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

10

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Arbitration; Jury Waiver. Trustor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Deed of Trust or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party; provided, however, in the event of an Event of Default by Trustor, Lender shall have the unilateral right to exercise its remedies in its sole and absolute discretion, and under such circumstances, Lender can choose in its sole discretion to pursue arbitration or not and Trustor hereby waives any right to enforce the arbitration provisions of this Deed of Trust if contrary to the choice of Lender. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Trustor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Deed of Trust shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision. WITHOUT INTENDING IN ANY WAY TO LIMIT THIS DISPUTE RESOLUTION PROVISION, THE PARTIES WAIVE TRIAL BY JURY IN RESPECT OF ANY AND ALL "DISPUTES" AND ANY ACTION ON ANY "DISPUTE." THIS WAIVER SHALL APPLY TO THE EXTENT ANY "DISPUTE" IS NOT SUBMITTED TO JUDICIAL REFERENCE OR ARBITRATION, OR IS DEEMED BY THE ARBITRATOR, REFEREE OR ANY COURT WITH JURISDICTION TO BE NOT REQUIRED TO BE DETERMINED BY JUDICIAL REFERENCE OR ARBITRATION, OR NOT SUSCEPTIBLE OF BEING SO DETERMINED. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES AND THE PARTIES HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THIS DEED OF TRUST, THE LOAN AGREEMENT AND THE OTHER RELATED DOCUMENTS. THE PARTIES ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. TRUSTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS DEED OF TRUST AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. WHETHER THE CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.**

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by the laws of the State of California without regard to its conflicts of law provisions.**

**Jurisdiction. WITH RESPECT TO ANY CLAIM OR ACTION ARISING UNDER, THIS DEED OF TRUST, OR THE OTHER RELATED DOCUMENTS, TRUSTOR (A) IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA AND THE UNITED STATES DISTRICT COURT LOCATED IN LOS ANGELES COUNTY, CALIFORNIA, AND APPELLATE COURTS FROM ANY THEREOF, AND (B) IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS BROUGHT IN ANY SUCH COURT, IRREVOCABLY WAIVES ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS DEED OF TRUST, OR THE OTHER RELATED DOCUMENTS WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions.

11

Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall first have the meanings attributed to such terms in the Loan Agreement, and if not defined in the Loan Agreement, in the Uniform Commercial Code.

**Affiliate.** The word "Affiliate" means any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Trustor, or that has a common guarantor with Trustor. "Control," for purposes of this definition, means direct or indirect ownership or control of more than five percent (5%) of the voting interests of the subject entity. "Person," for purposes of this definition, means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**Beneficiary.** The word "Beneficiary" means Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender, and its successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust by Trustor to Trustee for the benefit of Lender, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the Events of Default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Obligations.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Obligations.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Loan Agreement, Notes or other Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Loan Agreement, Notes or other Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender, its successors and assigns.

**Loan.** The word "Loan" means the loan or loans made to Trustor under this Deed of Trust, the Loan Agreement, the Notes and the other Related Documents as described therein in a maximum principal amount of $3,737,100 00 Dollars.

12

**Loan Agreement** The words "Loan Agreement" mean the Revolving Line of Credit Agreement, dated as of 2/16/2016, by Trustor and Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the agreement.

**Note.** The word "Note" means the promissory note dated 2/16/2016, in the original principal amount of $3,737,100.00 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement and all other promissory notes from Trustor to Lender entered into pursuant to the Loan Agreement, as such promissory notes may be renewed, extended, modified, refinanced, consolidated or substituted.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Plans and Specifications.** The words "Plans and Specifications" mean the plans and specifications, if any, for the project to be completed at the Property by Trustor, which have been submitted to and approved by Lender, together with such changes and additions as may be approved by Lender in writing.

**Property.** The word "Property" means collectively the Real Property and the Personal Property

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustor.** The word "Trustor" means 2401 Nottingham, LLC, a California Limited Liability Company

*[signature page follows]*

13

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.**

**TRUSTOR:**

**2401 Nottingham, LLC, a California Limited Liability Company**

By: ______________________
Jeffrey Yohai, Sole Member

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On February 17, 2016 before me, James Arthur Ovenden, Notary Public
(insert name and title of the officer)

personally appeared Jeffrey Yohai,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ______________________ (Seal)

JAMES ARTHUR OVENDEN
Commission # 2081050
Notary Public - California
Los Angeles County
My Comm. Expires Sep 8, 2018

14

# 3-in-1 CERTIFICATION

Pursuant to the provisions of Government Code 27361.7, I certify under penalty of perjury that the Notary Seal on the document to which this statement is attached reads as follows:

Name of Notary: James Arthur Ovenden.

Commission no.: 2081050

County where bond is filed: Los Angeles.

Commission expiration date: Sep 8, 2018

Vendor/Manufacturer's no: NPA1

---

Pursuant to the provisions of Government Code 27361.7, I certify under penalty of perjury that the illegible portion of this document to which this statement is attached reads as follows:

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

---

Pursuant to the provisions of Government Code 27361.7, I certify under penalty of perjury that the illegible portion of this document to which this statement is attached reads as follows:

State of ____________
County of ___________
On_________before me,_________________A NOTARY PUBLIC, personally appeared ___________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
Signature_______________________ (Seal)

PLACE OF EXECUTION: Brea

DATE: 2-17-14

SIGNATURE: [signature], DPS Agent

DPS

15

# EXHIBIT A

## LEGAL DESCRIPTION

**See Attached.**

16

**EXHIBIT "A"**

LOT 28 OF TRACT NO. 5337, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 64 PAGE(S) 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

17

# (DO NOT RECORD)

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

To: ______________________________, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

______________________________________________________________

**Date:** ______________________________ **Beneficiary:** ______________________

**By:** ____________________

**Its:** ____________________

CA CRFR REV.2015.11.18

# COMMERCIAL GUARANTY

**Principal: $3,737,100.00** **Loan Date:2/16/2016** **Maturity: 3/1/2017** **Loan No: 2015000441**

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** **2401 Nottingham, LLC,**
**a California Limited Liability Company**
**3991 MacArthur Blvd, Ste 125**
**Newport Beach, CA 92660**

**Lender:** **Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender**
**ATTENTION LENDING DEPARTMENT**
**21650 Oxnard Street, Suite 1700**
**Woodland Hills , CA 91367**
**(818) 661-1778**

**Guarantor:** **Jeffrey Yohai**
**3991 MacArthur Blvd, Ste 125**
**Newport Beach, CA 92660**

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Guaranteed Indebtedness of Borrower (or any Affiliate of Borrower) to Lender, including without limitation the performance and discharge of all Borrower's obligations under the Loan Agreement, the Notes and the other Loan Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Guaranteed Indebtedness or against any collateral securing the Guaranteed Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Loan Agreement, the Notes and other Loan Documents.

**GUARANTEED INDEBTEDNESS.** The words "Guaranteed Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under any indebtedness between Borrower and Lender, or any Affiliate of Borrower and Lender, including without limitation, the Obligations and any other indebtedness evidenced by the Loan Agreement, the Notes and the other Loan Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Notes and the other Loan Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS GUARANTY ENCOMPASSES A REVOLVING LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE OBLIGATIONS ARE PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all of the Guaranteed Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Obligations shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Obligations or any part of the Obligations, including increases and decreases of the rate of interest on the Obligations; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for

the payment of this Guaranty or the Obligations, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Obligations; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Obligations; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents, warrants and covenants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) Guarantor will timely provide the Guarantor's financial statements and other financial information to Lender required under Section 10.1 of the Loan Agreement, and upon Lender's request, Guarantor will provide to Lender such other financial and credit information requested by Lender and in a form acceptable to Lender, and all such financial information which currently has been and all future financial information which will be provided to Lender is and will fairly present Guarantor's financial condition as of the dates the financial information is provided and constitute a true and correct statement of Guarantor's financial position; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender, and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Obligations, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Obligations; (B) proceed against any person, including Borrower, before proceeding against Guarantor; (C) proceed against any collateral for the Obligations, including Borrower's collateral, before proceeding against Guarantor; (D) apply any payments or proceeds received against the Obligations in any order; (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Obligations, Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the Obligations; (J) the application of proceeds of the Obligations by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Obligations, or the loss or release of any collateral by operation of law or otherwise; (L) any statute of limitations in any action under this Guaranty or on the Obligations; or (M) any modification or change in terms of the Obligations, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Obligations is due and any change in the interest rate.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive, and California Civil Code Sections 2899 and 3433.

Guarantor waives (N) any defense to the recovery by Lender against Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any security for this Guaranty based upon Lender's election of any remedy against any Guarantor or Borrower, including the defense to enforcement of this Guaranty (the so-called "Gradsky" defense) which, absent this waiver, Guarantor would have by virtue of an election by Lender to conduct a non-judicial foreclosure sale (also known as a "trustee's sale") of any real property security for the Obligations, it being understood by Guarantor that any such non-judicial foreclosure sale will destroy, by operation of Section 580d of the California Code of Civil Procedure, all rights of any party to a deficiency judgment against Borrower and, as a consequence, will destroy all rights that Guarantor would otherwise have (including the right of subrogation, the right of reimbursement, and the right of contribution) to proceed against Borrower, (O) all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise and (P) any right to a fair value hearing under Section 580a of the California Code of Civil Procedure, or any other similar law, to determine the size of any deficiency owing (for which Guarantors would be liable hereunder) following a non-judicial foreclosure sale.

Guarantor waives all rights and defenses that Guarantor may have because the Obligations are secured by real property. This means among other things: (Q) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower, and (R) if Lender forecloses on any real property collateral pledged by Borrower: (1)

the amount of the Obligations may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price and (2) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the Obligations are paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Obligations now or hereafter held by Lender.

**Guarantor's Understanding With Respect To Waivers.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**Subordination of Borrower's Debts to Guarantor.** Guarantor agrees that the Obligations, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Obligations. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Obligations. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Guaranty:

**AMENDMENTS.** This Guaranty, together with the Loan Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ARBITRATION; JURY WAIVER. Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party; provided, however, in the event of a default by Guarantor under this Guaranty, Lender shall have the unilateral right to exercise its remedies in its sole and absolute discretion, and under such circumstances, Lender can choose in its sole discretion to pursue arbitration or not and Guarantor hereby waives any right to enforce the arbitration provisions of this Guaranty if contrary to the choice of Lender. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to any Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Guarantor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision. Any arbitration, judicial reference or trial by a judge of any dispute, claim or controversy between the parties hereto will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver"). Regardless of anything else in this Section, the validity and effect of the Class Action Waiver may be determined only by a court or referee and not by an arbitrator. The parties to this Guaranty acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the parties and is nonseverable from the agreement to arbitrate all disputes, claims and controversies between the parties. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate shall be null and void with respect to such**

**proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated. WITHOUT INTENDING IN ANY WAY TO LIMIT THIS DISPUTE RESOLUTION PROVISION, THE PARTIES WAIVE TRIAL BY JURY IN RESPECT OF ANY AND ALL "DISPUTES" AND ANY ACTION ON ANY "DISPUTE." THIS WAIVER SHALL APPLY TO THE EXTENT ANY "DISPUTE" IS NOT SUBMITTED TO JUDICIAL REFERENCE OR ARBITRATION, OR IS DEEMED BY THE ARBITRATOR, REFEREE OR ANY COURT WITH JURISDICTION TO BE NOT REQUIRED TO BE DETERMINED BY JUDICIAL REFERENCE OR ARBITRATION, OR NOT SUSCEPTIBLE OF BEING SO DETERMINED. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES AND THE PARTIES HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THIS GUARANTY AND THE OTHER LOAN DOCUMENTS. THE PARTIES ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. GUARANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. WHETHER THE CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.**

**ATTORNEYS' FEES; EXPENSES.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**CAPTION HEADINGS.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by the laws of the State of California without regard to its conflicts of law provisions.**

**Jurisdiction. WITH RESPECT TO ANY CLAIM OR ACTION ARISING UNDER, THIS GUARANTY, OR THE OTHER LOAN DOCUMENTS, GUARANTOR (A) IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA AND THE UNITED STATES DISTRICT COURT LOCATED IN LOS ANGELES COUNTY, CALIFORNIA, AND APPELLATE COURTS FROM ANY THEREOF, AND (B) IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS BROUGHT IN ANY SUCH COURT, IRREVOCABLY WAIVES ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS GUARANTY OR THE OTHER LOAN DOCUMENTS WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION..**

**INTEGRATION.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**INTERPRETATION.** In all cases where there is more than one Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Guarantor named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the word "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**NOTICES.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when sent by electronic mail prior to 5:00 p.m. (Pacific Standard Time or Pacific Daylight Time as applicable, on a Business Day) (unless otherwise required by law) provided that a copy is simultaneously sent by one of the other permitted means of giving notice set forth in this section, or one (1) Business Day after being deposited with a nationally recognized overnight courier, directed to the addresses shown near the beginning of this Guaranty. Guarantor requests that copies of any notices of default and sale be directed to Guarantor's address shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Loan Agreement:

**AFFILIATE.** The word "Affiliate" means any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Borrower, or that has a common guarantor with Borrower. "Control," for purposes of this definition, means direct or indirect ownership or control of more than five percent (5%) of the voting interests of the subject entity. "Person," for purposes of this definition, means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**BORROWER.** The word "Borrower" means 2401 Nottingham, LLC, a California Limited Liability Company and includes all co-signers and co-makers signing the Notes and all their successors and assigns.

**GUARANTOR.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Jeffrey Yohai, and in each case, any signer's successors and assigns.

**GUARANTY.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**LENDER.** The word "Lender" means Genesis Capital Master Fund II, LLC, a Delaware Limited Liability Company, a California Finance Lender, its successors and assigns.

**LOAN AGREEMENT.** The words "Loan Agreement" mean the Revolving Line of Credit Agreement, dated as of 2/16/2016, by Borrower and Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the agreement.

**UNIFORM COMMERCIAL CODE.** The words "Uniform Commercial Code" mean the Uniform Commercial Code of the State of California, as amended and modified from time to time.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED 2/16/2016.**

**GUARANTOR:**

Jeffrey Yohai

**By:** ______________________________
**Jeffrey Yohai**

# EXHIBIT B

MARIN WEST

ABOUT
ABOUT MARIN WEST (/NEW-PAGE/)
OUR TEAM (/NEW-PAGE-2/)
PORTFOLIO (/NEW-INDEX-1/)
PROJECTS
1550 BLUE JAY WAY (/BLUEJAYWAY-1/)
2521 NOTTINGHAM AVENUE (/UPPER/)
2401 NOTTINGHAM AVENUE (/2401/)
779 STRADELLA ROAD (/7-CLIFFSIDE-DRIVE-1/)

CONTACT (/NEW-INDEX/)

MARIN WEST

ABOUT
ABOUT MARIN WEST (/NEW-PAGE/)
OUR TEAM (/NEW-PAGE-2/)
PORTFOLIO (/NEW-INDEX-1/)
PROJECTS
1550 BLUE JAY WAY (/BLUEJAYWAY-1/)
2521 NOTTINGHAM AVENUE (/UPPER/)
2401 NOTTINGHAM AVENUE (/2401/)
779 STRADELLA ROAD (/7-CLIFFSIDE-DRIVE-1/)

CONTACT (/NEW-INDEX/)



062

# 1550 BLUE JAY WAY

## West Hollywood



(/bluejayway-1)

VIEW PROJECT (/BLUEJAYWAY-1)


2521 NOTTINGHAM
AVENUE
Los Feliz



(/2401-1)

VIEW PROJECT (/UPPER)



(/2401)

VIEW PROJECT (/2401)



# 779 STRADELLA ROAD

## Bel Air


(/7-cliffside-drive-1)

VIEW PROJECT (/7-CLIFFSIDE-DRIVE-1)

# EXHIBIT C

lacounty.gov

Los Angeles County
Treasurer and Tax Collector

## Property Tax Payment Inquiry

**Last updated Thursday January 26, 2017**

**Assessor ID Number:** 5588-003-012 **Year:** 16 **Seq. No.:** 000

**ELECTRONIC FUND TRANSFER (EFT) NUMBER**
**ID#:** 19 5588 003 012 8 **YEAR:** 16 **SEQUENCE:** 000 2

| Installment 1 | | Installment 2 | |
|---|---|---|---|
| Tax Amount | $19,603.97 | Tax Amount | $19,603.95 |
| Penalty Amount | $1,960.39 | Pen/Cost Amount | $0.00 |
| Total Due | $21,564.36 | Total Due | $19,603.95 |
| Paid Amount | $0.00 | Paid Amount | $0.00 |
| Balance Due | $21,564.36 | Balance Due | $19,603.95 |
| Delinquent If Not Paid By | 12/12/2016 | Delinquent If Not Paid By | 04/10/2017 |

**Message:**

Tax Status: CURRENT

Select Another Account

For help or inquiries regarding online payments, contact us at info@ttc.lacounty.gov.
Our business hours are 8:00 a.m. to 5:00 p.m., Pacific Time, Monday through Friday, excluding Los Angeles County holidays.
Our office is located in the Kenneth Hahn Hall of Administration, 225 North Hill Street, First Floor Lobby, Los Angeles, CA 90012.

If you are having trouble using this site, it may be because you are using a slightly older internet browser or an unsupported internet browser.
See a list of supported internet browsers.

Terms of Use | Privacy & Security Policy

©2002-2017 Los Angeles County Treasurer and Tax Collector. All Rights Reserved.

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

| | |
|---|---|
| In Re: | Case No. 8:16-bk-15156-CB |
| 779 STRADELLA, LLC, a Delaware Limited Liability Company, Debtor, | Chapter 11<br>Santa Ana, California<br>Wednesday, January 11, 2017<br>10:00 a.m. |
| MT. YOHAI, LLC, a Delaware Limited Liability Company, Debtor, | Case No. 8:16-bk-15157-CB |
| 1550 BLUE JAY WAY, LLC, a Delaware Limited Liability Company, Debtor, | Case No. 8:16-bk-15171-CB |
| 2401 NOTTINGHAM, LLC, a Delaware Limited Liability Company, Debtor. | Case No. 8:16-bk-15243-CB |

SCHEDULING AND CASE MANAGEMENT CONFERENCE

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CATHERINE BAUER
UNITED STATES BANKRUPTCY JUDGE

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For the Debtors: | MARC C. FORSYTHE, ESQ.<br>Goe & Forsythe, LLP<br>18101 Von Karman Avenue<br>Suite 1200<br>Irvine, California 92612<br>(949) 798-2460 |
| For Genesis Capital: | JASON POMERANTZ, ESQ.<br>Pachulski, Stang, Ziehl & Jones, LLP<br>10100 Santa Monica Boulevard<br>13th Floor<br>Los Angeles, California 90067<br>(310) 277-6910 |
| For the United States Trustee: | MICHAEL J. HAUSER, ESQ.<br>411 West Fourth Street<br>Suite 7160<br>Santa Ana, California 92701<br>(714) 338-3400 |
| For Greenberg, Glusker Claman & Machtinger, LLP | BRIAN L. DAVIDOFF, ESQ.<br>Greenberg, Glusker, Fields, Claman & Machtinger, LLP<br>1900 Avenue of the Stars<br>21st Floor<br>Los Angeles, California 90067<br>(310) 553-3610 |
| For R.S. Lending, Inc.: | JENNIFER E. NIEMANN, ESQ.<br>Felderstein, Fitzgerald, Willoughby & Pascuzzi, LLP<br>400 Capitol Mall, Suite 1750<br>Sacramento, California 95814<br>(916) 329-7400 |
| Court Recorder: | Sally Daniels<br>United States Bankruptcy Court<br>411 West Fourth Street<br>Santa Ana, California 92701 |
| Transcriber: | Shonna D. Mowrer<br>Echo Reporting, Inc.<br>4455 Morena Boulevard<br>Suite 104<br>San Diego, CA 92117<br>(858) 453-7590 |

SANTA ANA, CALIFORNIA WEDNESDAY JANUARY 11, 2017 10:00 A.M.

--oOo--

(Call to order of the Court.)

THE COURT: I'm going to call my new Chapter 11s, Number 14, 779 Stradella, LLC. Number 16, 1550 Blue Jay Way. Number 17, 2401 Nottingham. Did I get four there?

MR. HAUSER: Yes, four.

THE COURT: That was four?

MR. HAUSER: Yes.

THE COURT: Did I miss one?

MR. HAUSER: Yeah, Mt. --

THE COURT: Number 15 is Mt. Yohai?

MR. HAUSER: Mt. -- exactly.

THE COURT: Okay. Great.

MR. FORSYTHE: Good morning, your Honor. Marc Forsythe, proposed counsel for all the Debtors.

THE COURT: Thank you.

MR. POMERANTZ: Good morning, your Honor. Jason Pomerantz, Pachulski, Stang, Ziehl & Jones on behalf of Genesis Capital.

MR. HAUSER: Good morning, your Honor. Michael Hauser for the U.S. Trustee.

THE COURT: Great. Thank you. It's our first status conference on all these matters.

MR. DAVIDOFF: Your Honor, if I can just appear.

MS. NIEMANN (Telephonic): Your Honor --

THE COURT: Oh, I'm sorry. We have folks on the phone. I'm sorry. Sometimes I ignore you. Go ahead.

MR. DAVIDOFF (Telephonic): Thank you, your Honor. This is Brian Davidoff on behalf of DJ Blue Jay Way, LLC, which is in connection with Matter Number 16.

THE COURT: Great. Thank you.

MS. NIEMANN: Good morning, your Honor. This is Jennifer Niemann on behalf of R.S. Lending, Inc. in Number 16, 1550 Blue Jay Way, and Number 17, 2401 Nottingham.

THE COURT: All right. Great. Thank you so much.

So how goes it?

MR. FORSYTHE: Good morning, your Honor. Well, we've been active in these cases. And Mr. Jeff Yohai is the principal for all the Debtors. The cases were filed. He's had some medical issues, and glad to report that he's -- he's over those issues and will be appearing for his IDI next Tuesday.

The medical issues have made it very difficult on my firm to comply with U.S. Trustee requirements. We've done our best. I've been in constant communication with the U.S. Trustee's Office. We definitely have more stuff -- more work to do to get in compliance.

There's no cash collateral issues with these properties. There's two major lenders, both Genesis 2 and 3

type funds, both represented by the same counsel. We have an outside investor who has been in several settlement discussions with Genesis. It's -- I can't say there's a settlement yet. It's sometimes hot and cold.

But as of today, I understand from Mr. Pomerantz, we're -- we're at a point where we're looking for a little more time in relation -- as opposed to the -- I think the statement filed by Mr. Pachulski and Mr. Dulberg asking for an OSC on a SAR determination, which I don't think we're going to request today, but I can address that if that's where we go.

In looking at these properties, they're all going to require new value, obviously. The assets are the properties. And the outside investors, in conjunction with Mr. Yohai, have been seriously looking at all these properties, and I can tell you that they're not dreamers. They've concluded that the 2401 Nottingham case, we'll be seeking to dismiss that and give it back to the lender. It's not a property that we can make work. But their three properties show significant hope, and we're hoping we can work out a deal with the lender.

And that's kind of where we're at, your Honor.

THE COURT: All right.

MR. FORSYTHE: And I'll let Mr. Pomerantz and Mr. Hauser chime in.

MR. POMERANTZ: Good morning, your Honor. I guess with respect to the case that Mr. Forsythe talked about seeking to dismiss, the 2401, is that -- is there a reason -- is there any reason not to -- we're in support of that so we can continue the foreclosure proceedings.

THE COURT: Uh-huh.

MR. POMERANTZ: Is there any reason not to dismiss that today?

MR. FORSYTHE: There'd be no problem other than just -- I believe there's some other creditors, your Honor. I apologize. I think there are other creditors at 2401 Nottingham that might require notice. I don't mind doing it on a shortened notice basis, but I -- the Debtor consents to it. Or shortened notice. I just -- I would just be concerned about any kind of due process concerns.

THE COURT: Well, I mean, I think we could do it here. I mean, what kind of creditors are we talking?

MR. FORSYTHE: Very minor --

THE COURT: I mean, they're all --

MR. FORSYTHE: Very minor creditors, your Honor.

THE COURT: -- junior to the -- you're the first, right?

MR. POMERANTZ: We are, your Honor.

MR. FORSYTHE: They'd be unsecured creditors, your Honor.

THE COURT: They're unsecureds?

MR. FORSYTHE: Yeah.

MR. POMERANTZ: I just don't see the reason --

THE COURT: I don't see the reason that we'd have to give notice to dismiss it.

MR. FORSYTHE: Okay. Okay. That's fine, your Honor. I'm --

THE COURT: Okay. So we're going to go ahead and -- you're making an oral motion to dismiss?

MR. FORSYTHE: Yes, your Honor.

THE COURT: And that's on Number 17. I'm getting -- is that going to cause a problem? No. Good. I didn't think it would cause a problem. So Number 17 with an oral motion to dismiss, I'm going to grant that. And then the creditor can go forward with its remedies.

So if you could upload an order, Mr. Forsythe.

MR. FORSYTHE: Yes, your Honor.

THE COURT: That would be great. Thanks.

MR. FORSYTHE: Do you want me to run it by Mr. Pomerantz at all? It would be pretty simple.

MR. POMERANTZ: You could just send it to myself and Mr. Dulberg.

MR. FORSYTHE: Okay.

MR. POMERANTZ: We'll take a quick look. I'm sure it's going to be pretty generic.

THE COURT: Yeah.

MR. FORSYTHE: Yes.

THE COURT: All right. So that takes care of Nottingham.

MR. POMERANTZ: That does, your Honor.

With respect to the other three, as we said in our reservation of rights pleading and as Mr. Forsythe alluded to, we are concerned that these may be single-asset real estate cases. And if so, as the Court is well aware, if they are designated as such, there's a whole different time line.

And although the cases were filed, I believe, at the end of -- at the end of the calendar year last year, you know, if they are going to be single-asset real estate cases, then we need to know that so that we can comply -- the Debtor can comply with the requirements and we know what kind of time frame we're on.

I would -- we are in settlement discussions with -- with the various representatives of the Debtor -- of the Debtors, and we are hoping that we can come to a consensual resolution. However, I think it is in the best interest of the Court as well as the parties involved that we set a hearing on an OSC with respect to the SAR designation so that if those settlement discussions -- regardless, so that we will know before that 90-day period

expires whether they're designated SAR cases or not.

I would request that the Court set a hearing on an OSC four or five weeks out, maybe the week of February 13th, have papers filed two weeks prior. That would give -- and then any responses or replies one week prior to the hearing. That would give the parties another two or three weeks before any papers needed to be filed to try to reach a resolution.

And then we would just file the papers well in -- so the Court would make that determination with approximately 30 more days before that 90-day period would expire.

THE COURT: I'm not used to creditors asking me to set OSCs. I'm used to a motion being filed. I set OSCs. So that's a little unusual.

I'd like to hear from Mr. Forsythe whether --

MR. FORSYTHE: Thank you, your Honor. I was going to --

THE COURT: -- these are SARs.

MR. FORSYTHE: I apologize, your Honor.

I was going to address that. I -- like I said, this has gone hot and cold, so I didn't think we were going to go there. But now that we are there --

THE COURT: Uh-huh.

MR. FORSYTHE: -- completely improper. First of

all, it's their burden to prove a SAR motion. So for this Court to say an order to show cause, you're basically trying to put the burden on us to prove that we are not a SAR. That's not the case law.

Second of all, local bankruptcy rules require a noticed motion. Why did this Court need to set a hearing? He can go file the motion tomorrow. That's fine. Go do it. But that's not what the local bankruptcy rules say.

THE COURT: Okay.

MR. FORSYTHE: It's not providing me due process.

THE COURT: Just talk about why they're not single-asset. Can you --

MR. FORSYTHE: They're all single -- single-family residences, your Honor.

THE COURT: One is vacant land.

MR. FORSYTHE: One --

THE COURT: The plan is for it to be single-family.

MR. FORSYTHE: Yeah. Right. And so there's plenty of arguments here. Intent -- I've literally read every SAR case there is last night, your Honor, every one of them. I did not see one case that deals with -- you can basically look at these -- and I do not know they are, but home-flippers. You buy a home, you buy a residential home, you fix it up, and you sell it. It doesn't work out, you

file bankruptcy. That's not a single-asset real estate case.

These are all single-family residences. I feel very unarmed here by giving -- be given a statement filed two days before a status conference. It's not evidence.

THE COURT: Yeah, well, don't worry about it. I'm not going to set an OSC.

MR. FORSYTHE: Okay.

THE COURT: Because it should have been done by a motion.

MR. FORSYTHE: Thank you, your Honor.

THE COURT: I set OSCs.

MR. FORSYTHE: Thank you, your Honor.

THE COURT: Yeah.

MR. FORSYTHE: But I think --

THE COURT: And I understand what you're saying. There is an issue here. It's not clear-cut at all.

MR. FORSYTHE: Yeah. And so I would like the opportunity to brief it. I think it's completely improper --

THE COURT: I think it's interesting, yeah. No. I agree with you.

MR. FORSYTHE: So that's my position, your Honor.

THE COURT: Okay. If you want to bring a motion, then we can -- then we can look at the case law and -- you

know, it's not a commercial property. I mean, it's like a commercial enterprise, but they're each single-family residences. Yeah.

MR. FORSYTHE: There's a slew of cases -- there's actually a case Meruelo in 2009, your Honor, dealing -- a much larger situation with 52 parcels, multiple -- it can be a very complex area, your Honor, and it really requires full briefing on the issue.

THE COURT: No. It's interesting. Where was that out of, what circuit?

MR. FORSYTHE: Central District.

THE COURT: Oh, Central District.

MR. FORSYTHE: Yeah.

THE COURT: Oh, downtown?

MR. FORSYTHE: Yes. It's -- I have a copy of it right here, your Honor. I apologize, your Honor. It's Meruelo. It's -- I think Thompson was the judge that wrote the opinion.

THE COURT: Okay. It's out of the valley, huh?

MR. FORSYTHE: Yes.

THE COURT: I can find it if you don't want to send it.

MR. FORSYTHE: Yeah. It's -- yeah, there it is. In Re Meruelo Maddux Properties, 667 Fed.3d 1072. A Ninth Circuit 2012 case.

THE COURT: 667 Fed.3d. What was the rest of that? I'm sorry.

MR. FORSYTHE: I apologize.

THE COURT: You're too fast for me.

MR. FORSYTHE: 667 Fed.3d 1072.

THE COURT: What year was it?

MR. FORSYTHE: Ninth Circuit, 2012.

THE COURT: This is an interesting issue.

MR. FORSYTHE: Yes.

MR. POMERANTZ: We'll go ahead and file a motion, your Honor.

THE COURT: Okay. Great.

MR. POMERANTZ: We understand.

The only thing I would say is, assuming we can get the motion filed sometime by the end of next week, should we pick a date now? Should we just use your self-calendaring?

THE COURT: Just use the self-calendaring.

MR. POMERANTZ: It's up to you.

THE COURT: Yeah.

MR. POMERANTZ: Okay.

THE COURT: Just use the self-calendaring.

All right. How about the UST? What do you think?

MR. HAUSER: As Mr. Forsythe indicated, we were supposed to have the IDI the day before this hearing so we could inform the Court, but the principal is ill, so we

kicked it over to next week.

We did get a little compliance. Probably the most important piece was the real property questionnaires. I'm still trying to figure out the dynamics. Like, for example, I think -- I think it's just -- I'm giving the Court one example. I think it was purchased for like three five, and then we saw it on the website for sale for eight.

And what we didn't know, whether it was -- Genesis was just funding the purchase or whether their funding also included monies to rehab the property or that -- was that the purpose of the seconds that are from R.S. Lending and from Paul Manafort.

MR. FORSYTHE: Yes. 779 was purchased for 5.9 million. I believe Genesis' lien is about 6.7, and I think that's because of the accrual of interest of whatever. I don't think any money was provided by Genesis to develop the property.

And the seconds on all the properties -- the second on 779 and on Mt. Yohai, there's three seconds -- a second, third and fourth, all from insiders.

MR. HAUSER: But that was for the purpose of rehabbing the property.

MR. FORSYTHE: I believe so, but I have not confirmed that.

MR. HAUSER: Okay. And the story, as you said, is

these are very high-end flips. Because you look at the website, the house looks beautiful. So it's just a matter of the value added was not dollar-for-dollar, and therefore, they couldn't sell it for their estimated price --

MR. FORSYTHE: Yes.

MR. HAUSER: -- to take out Genesis.

The Genesis loans, how short were they? I mean, these look like real short-term --

MR. FORSYTHE: Very short-term loans.

MR. HAUSER: -- high-interest loans.

MR. FORSYTHE: Yes.

MR. HAUSER: Basically, hard money.

MR. FORSYTHE: Is that correct, Mr. Pomerantz?

MR. POMERANTZ: I don't have the specific of the --

MR. HAUSER: But I mean, we're looking at some of the time frames, there was one property that was bought in March. I think the loan was due like in August.

MR. FORSYTHE: Yes.

MR. HAUSER: Okay. So I just want to make sure we're dealing with what it sounds like. But none of the Genesis money was to actually rehab the property. That was simply for the acquisition of the property.

MR. FORSYTHE: That is my understanding, but I cannot --

MR. HAUSER: Okay. We'll get this at the IDI. And then the juniors was to essentially fund the rehab, and it was just a math problem, so they thought. We put in a dollar, we create a dollar and a half of value, and it didn't create that value.

MR. FORSYTHE: I'll confirm all this with my client on Friday, your Honor.

THE COURT: Okay.

MR. HAUSER: Yeah. Because we're just going to go -- now we're down three -- we'll go over each property. Because we have the real property questionnaires, and there's a lot of good information there. But just trying to figure out, you know, if that was the game plan. And something that was very short term, so it was, I guess, you know, a pretty risky proposition, but no risk, no reward. But that's the way it works.

That's really it, your Honor. Again, we don't have -- I don't think we have the DIP accounts open yet.

MR. FORSYTHE: We do not.

MR. HAUSER: Okay. We can give you some suggestions, if you have any problems with that.

MR. FORSYTHE: Right.

MR. HAUSER: Marilyn's got a couple of things. That's important because if the case goes forward -- I know there's no rents being collected now.

MR. FORSYTHE: Well, we have to have someplace to put the new volume on the --

MR. HAUSER: The other question is, have the properties been completely rehabbed such that they are already for sale?

MR. FORSYTHE: No, I do not believe so.

MR. HAUSER: I know that one is vacant, so --

MR. FORSYTHE: Yeah.

MR. HAUSER: So Stradella and Blue Jay are not actually completed, as far as for purposes of sale?

MR. FORSYTHE: That's my understanding, Mike, but like I said, my clients literally have not had a -- I'm going to meet with my client on Friday.

THE COURT: Okay.

MR. HAUSER: Yeah.

MR. FORSYTHE: Like I say, he's had severe medical issues.

MR. HAUSER: So that's the stuff we'll gather at the IDI. And if the Court wants to report sooner rather than later, we can come back in two weeks, but -- or whenever the hearing is. We don't have the --

THE COURT: We don't have the hearing on motion yet.

MR. HAUSER: Yeah. So that it's all on the same day, and we can give the Court more feedback.

MR. FORSYTHE: Your Honor, I can -- when I get the motion, I can notice up a status conference, a case --

THE COURT: Well, I need to put something down. And we can continue it. I can put something down -- because I don't want to lose track -- and then we can continue it.

MR. FORSYTHE: Okay.

THE COURT: Mr. Pomerantz, when do you think you're going to set this motion for? I'll try to put the case management the same day. What do you think?

MR. POMERANTZ: Well, your Honor, we'll have it on file by the end of next week.

THE COURT: End of next week. Okay. So --

MR. POMERANTZ: The week of the 20th maybe of February or --

THE COURT: Right. Okay.

MR. POMERANTZ: -- the week of the 13th. We could get it on file probably in time for that.

THE COURT: That's my trial week, so we'll have to do the 22nd. Because I think the 8th is too short. It might -- the 8th might work.

MR. FORSYTHE: I apologize, your Honor. What was that date?

THE COURT: I have either the 8th or the 22nd of February.

MR. POMERANTZ: I think the 22nd of February.

That gives them enough time and --

THE COURT: I think we should do that. Yeah, I think that we don't want to be rushed.

MR. HAUSER: The good thing about -- our biggest concern -- and I hope we'll have this clear -- but I assume that there's insurance in place on all the properties, your Honor.

MR. FORSYTHE: We are getting insurance, yes. Yes.

THE COURT: Getting insurance.

MR. HAUSER: Yes. Okay.

MR. FORSYTHE: Yeah.

THE COURT: Okay.

MR. HAUSER: So let me --

MR. FORSYTHE: I think there's insurance in place on -- on one or two of them. I'm not sure all three.

MR. HAUSER: Okay. And then under --

MR. FORSYTHE: There is -- yes. I apologize. There is insurance on all three.

THE COURT: Okay.

MR. HAUSER: Okay. We'll need proof of that. I mean, that's probably the most critical thing from the point of asset preservation is, obviously, you know, you don't want someone walking through there, falling through a whatever, and then you have an administrative claim that's

not covered by insurance and it hurts everyone.

MR. FORSYTHE: Yeah. Trust me, that's priority one.

What date and what time on February 22?

THE COURT: It would be at 10:00.

MR. HAUSER: Ten.

MR. FORSYTHE: February 22nd at 10:00 for --

THE COURT: Let me see. The people on the phone, I've been ignoring you. I'm sorry. Did you want to chime in?

MR. DAVIDOFF: Your Honor, this is Brian Davidoff. Again, Matter Number 16, Blue Jay Way.

Just so that the Court and the parties are aware, my client invested, slash, loaned $3 million to this entity. The operating agreement which was being negotiated among the parties was never fully executed. So we're not sure whether we're a creditor or investor. Not sure the basis of the filing or the authority for the filing.

I'm not challenging any of that at this point, your Honor. I just want the Court to be aware that these are issues that we're looking into.

THE COURT: Well, I appreciate that. Thank you.

MR. HAUSER: Your Honor, is that -- does Mr. Davidoff represent R.S. Lending or Mr. Manafort or --

MR. DAVIDOFF: No, neither. I represent an entity

by the name of DJ Blue Jay Way, LLC. It's not R.S. Lending. It's a third-party investor.

MR. HAUSER: All right. That's interesting.

THE COURT: All righty. And --

MR. HAUSER: And you lent $3 million to this entity? I mean --

MR. DAVIDOFF: Correct.

MR. HAUSER: -- not you, your client, sir.

MR. DAVIDOFF: Yes.

MR. HAUSER: Okay.

MR. POMERANTZ: I thought there was also someone on the phone from R.S. Lending.

THE COURT: There is. There is Mr. Niemann.

MS. NIEMANN: Yes. Yes.

THE COURT: Any comments?

MS. NIEMANN: I represent R.S. Lending.

THE COURT: And you're representing R.S. Lending?

MS. NIEMANN: That's correct, your Honor.

THE COURT: Any thoughts, comments, problems?

MS. NIEMANN: We believe this is also a single-asset real estate case, and we'll be looking forward to the motion to designate filed by Genesis.

THE COURT: All right.

MR. POMERANTZ: Your Honor, can I get the spelling of counsel's name and maybe her firm? Because I couldn't

make it out from what she said. I apologize. And there were no papers filed.

MS. NIEMANN: Jennifer Niemann, N, as in Nancy, I-E-M, as in Mary, A-N-N. I'm with the law firm of Felderstein, Fitzgerald, Willoughby & Pascuzzi, LLC.

MR. POMERANTZ: Thank you.

THE COURT: All right. So it sounds like what we're going to do is continue all of these except for the one that was dismissed to February 22nd at 10:00 o'clock. And we will probably have a motion at that point for determination of whether these are single-asset real estate.

Very interesting issue. So February 22nd at 10:00 o'clock for the remaining cases. Anything else? That's it?

MR. POMERANTZ: That's it, your Honor.

THE COURT: All righty. So we will see you on February 22nd at 10:00 o'clock.

ALL: Thank you, your Honor.

THE COURT: Thank you.

MS. NIEMANN: Thank you, your Honor.

THE COURT: Thank you.

(Proceedings concluded.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Shonna Mowrer
Transcriber

1/26/17
Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*): ***NOTICE OF MOTION AND MOTION OF GENESIS CAPITAL FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. SECTION 362 OR ALTERNATIVELY, MOTION FOR ORDER DISMISSING CHAPTER 11 CASE IF AND TO THE EXTENT NOT PREVIOUSLY DISMISSED, AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JOHN DAY AND JEFFREY W. DULBERG IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **<u>February 1, 2017</u>**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- *Jeffrey W Dulberg jdulberg@pszjlaw.com*
- *Marc C Forsythe kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com*
- *Michael J Hauser michael.hauser@usdoj.gov*
- *United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov*

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) **<u>February 1, 2017</u>**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** <u>(state method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **<u>February 1, 2017</u>**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**<u>VIA Overnight Mail</u>**
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 1, 2017 | Myra Kulick | */s/ Myra Kulick* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Label Matrix for local noticing
0973-8
Case 8:16-bk-15243-CB
Central District of California
Santa Ana
Wed Feb 1 17:07:49 PST 2017

2401 Nottingham, LLC, a California Limited L
3991 MacArthur Blvd.
Suite 125
Newport Beach, CA 92660-3049

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

California TD Specialists
8190 East Kaiser Blvd.
Anaheim, CA 92808-2215

Coast Fireplaces
16659 Gramercy Place
Gardena, CA 90247-5201

Crest Real Estate, LLC
11150 W. Olympic Blvd., Suite 700
Los Angeles, CA 90064-1825

Genesis Capital Master Fund III LLC
Attn: Lending Department
21650 Oxnard Street
Suite 1700
Woodland Hills, CA 91367-5058

Jessica Manafort
703 Greenleaf
Topanga, CA 90290

LOS ANGELES COUNTY TREASURER AND TAX COLLECT
PO BOX 54110
LOS ANGELES CA 90054-0110

Nicholas Marmet
2257 Betty Lane
Beverly Hills, CA 90210-1726

Paul Manafort
721 Fifth Avenue #43G
New York, NY 10022-2537

RH Construction Group/Shoreline Con
17408 Minnehaha Street
Granada Hills, CA 91344-6046

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Marc C Forsythe
18101 Von Karman Avenue Ste 1200
Irvine, CA 92612-7119

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)Genesis Capital, LLC

End of Label Matrix
Mailable recipients 17
Bypassed recipients 2
Total 19